[Nos. G040628, G041503. Fourth Dist., Div. Three. Feb. 24, 2010.]

PATRICK S. DONAHUE, Plaintiff and Respondent, v.
MICHELLE DONAHUE, Defendant and Appellant.

COUNSEL

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller and Vicki Marolt Buchanan for Defendant and Appellant.

Loeb & Loeb, David C. Nelson and Adam F. Streisand for Plaintiff and Respondent.

OPINION

**ARONSON, J.**—In separate orders, the trial court charged a trust with some $5 million in past and ongoing attorney fees incurred on behalf of a former trustee in defending against the beneficiary's allegations of self-dealing and conflict of interest. Eight attorneys from three major law firms comprised the former trustee's legal team, with four to five of those attorneys simultaneously appearing at the 14-day court trial.

We reverse the fee awards. While trustees are properly reimbursed for reasonable attorney fees to defend adverse claims against the trust, we cannot

determine from the trial court's order whether the fee awards are consistent with applicable legal principles. Long-established principles of trust law impose a double-barreled reasonableness requirement: the fee award must be reasonable in amount and reasonably necessary to the conduct of the litigation, but it also must be reasonable and appropriate *for the benefit of the trust*. We remand for the trial court to review the evidence and to assess a fee reimbursement in accordance with these dual criteria.

I

FACTUAL AND PROCEDURAL BACKGROUND

Appellant Michelle Donahue (Michelle) became involved in litigation with her brother-in-law, respondent Patrick S. Donahue (Patrick), over his administration of an irrevocable inter vivos trust established by her late husband, Daniel W. Donahue (decedent).[1] The trust's assets were highly concentrated in a private REIT (real estate investment trust) that owned and operated numerous shopping centers in the western United States. Patrick filled the roles of director, officer, and shareholder of the REIT. Michelle is a life income beneficiary of the trust; her three daughters are the remainder beneficiaries.

The decedent named Patrick as his successor trustee of the trust. Patrick served as trustee for nearly two years beginning in 2003 until his resignation in October 2004. He was succeeded by his brother, Terence Donahue (Terence),[2] along with cotrustee Northern Trust Bank of California.[3]

A. *The First Appeal (G040259)*

In April 2005, Patrick initiated the instant litigation under Probate Code section 17200 to secure court confirmation and approval of a final accounting and compensation for his service as a trustee.

Michelle objected. She claimed Patrick imprudently sold approximately 40 percent of the trust's interest in the REIT below fair market value to the REIT, thereby losing about $20 million in potential appreciation.

---

[1] Like the litigants, we use first names to refer to the various persons who share the Donahue surname for ease of reference, not out of disrespect.

[2] The record contains varying spellings for Terence, but we follow this form because it has been used by both sides in their latest set of briefs.

[3] In conjunction with her reply brief, Michelle has filed a motion to augment the record to show that Northern Trust Bank was a "captive" cotrustee, rather than an independent fiduciary. We deny the motion as unnecessary to resolve the appeal.

The 14-day court trial took place in the fall of 2007. Patrick, as the former trustee, was represented by four attorneys and a paralegal from two major law firms, Loeb & Loeb and Jones Day. In addition, the current trustees retained two attorneys to represent the trust. The minor beneficiaries were represented by minors' counsel.

The court approved the accounting and overruled Michelle's objections. Michelle appealed from the trial court's final ruling on Patrick's accounting and her objections. In *Donahue v. Donahue* (Feb. 11, 2010, G040259) (nonpub. opn.), we affirmed the judgment on the accounting, concluding substantial evidence supported the trial court's determination that " 'the Trust received fair value for the options and shares.' "

### B. *The Second Appeal (G040628)*

In November 2007, Patrick petitioned for more than $5 million in attorney and trustee fees he incurred "to defend himself against unmeritorious allegations that virtually every act undertaken by him as trustee was a breach of trust." Patrick sought reimbursement from the trust for incurring through trial $4.85 million in attorney fees and $155,375 for personal compensation. Patrick's fee request included the sum of $184,453 simply to prepare the fee petitions. Another $366,000 was spent to prepare an 80-page case chronology and for "case administration." One attorney at Jones Day billed 3,661 hours, for a total of $1.5 million during his involvement.

Among Patrick's cost requests were $150,000 in charges billed by DecisionQuest, a trial consulting firm retained to provide "visual planning and development" and "multimedia design, programming & production" during the court trial. Patrick claimed he incurred these audio-visual expenses "in the ordinary course of business of administering the Trust as successor trustee and in the proceedings relating to my activities as successor trustee."

Patrick initially supported his fee claim with a declaration from Adam Streisand, a partner at Loeb & Loeb, who purported to authenticate spreadsheets to break down the attorney fees Patrick incurred through his 45-member legal team from three separate law firms.

In opposing the motion, Michelle requested limited discovery on the amount and necessity of the fees, including the retention of an expert. Michelle explained the basis of her request: "Given the large sum at issue, the number of attorneys involved, and billing rates up to $690/hour, it is appropriate to allow Beneficiary an opportunity to retain an expert witness in this field and allow that expert sufficient time to review bills, records and supporting documentation for purposes of formulating his opinion and advising the Court." Alternatively, Michelle sought to appoint a referee pursuant to

Code of Civil Procedure section 639 to review the time entries and make a recommendation to the court.

In his reply, Patrick explained that he was "predominantly represented" by a four-person legal team at Jones Day from 2005 to early 2007, but he also decided to retain Loeb & Loeb in May 2006 "based on its specialty in trusts and estates litigation to take the lead in the trial." About 86 percent of Patrick's requested attorney fees were billed by eight "key" individuals. Patrick justified the $1.5 million " 'singlehandedly' " billed by a Jones Day associate as "not surprising" given "Michelle's outrageous and limitless discovery . . . ." According to Patrick, "it was far more cost-effective in this highly complex case to build upon the experience and insight of the lawyers involved in the case up until the point that Loeb & Loeb assumed a lead role."[4] Patrick opposed Michelle's request to consult an expert because each side's experts would contradict the other, explaining, "For every 'expert' Michelle could call upon who might testify that the fees are unreasonable, Patrick could do the same to testify that the fees are reasonable."

At the January 2008 hearing on the fee petition, the trial court denied Michelle's request for discovery, but ordered Patrick to provide admissible evidence to support his claim because "Mr. Streisand does not have personal knowledge of the work done by other firms and cannot supply the foundation for the business record exception to the hearsay rule for firms other than his own."

Patrick thereupon filed supplemental declarations to support the fee request from each of the three law firms that continued to represent him throughout the litigation. Michelle objected to the "excessive duplication of work performed simultaneously between three large law firms . . . ." (Underscoring & capitalization omitted.) She pointed out that Patrick's $5 million fee claim came after the trust paid another $3 million in attorney fees to represent the current trustees.[5] In contrast, Michelle argued, she was primarily represented by two attorneys, who billed at the rate of $375 per hour. Michelle renewed her request for limited discovery, and suggested the appointment of a discovery referee to place appropriate limits on any attorney depositions.

A second hearing on the fee request was held on April 25, 2008. Michelle's counsel argued that the $150,000 cost item by the DecisionQuest audio-visual technicians itself "approaches what some people could try the case for the three weeks that they were here."

---

[4] Patrick incurred legal fees from a third law firm, Greenberg Traurig, when one of his original attorneys at Jones Day, litigation partner Scott Bertzyk, later joined Greenberg Traurig.

[5] The trust paid approximately $2 million to Sacks Glazier and an additional $1 million to Russ Allen to represent the current trustees in the trust litigation.

The court issued a minute order on April 29, 2008, directing the current trustees "to reimburse the fees and costs prayed for in the petition with the following exceptions." The court specifically excluded fee charges for 11 named timekeepers, none of whom were attorneys or paralegals, and for indecipherable items on Loeb & Loeb's November 2007 invoices because they "are so severely redacted the court cannot assess the appropriateness of the charges listed." The court deducted about $42,000 in costs from the $700,000 cost bill, but otherwise left the cost items untouched.

On July 9, 2008, Michelle filed a timely notice of appeal from the order for attorney fees and costs.

## C. *The Third Appeal (G041503)*

While Michelle's first two appeals were pending, Patrick applied to the court for an additional $300,000 in past attorney fees and trustee fees from the close of trial in October 2007 through May 2008, and for an order requiring the current cotrustees to pay his future appellate fees.

Patrick's new request included the fees and costs from the Loeb & Loeb invoice that had been redacted, as well as $58,000 in fees to draft and litigate the statement of decision. About $195,000 of the new fee request was for researching and drafting the first fee petition, analyzing the billing records of the law firms, reviewing Michelle's opposition, preparing the replies and attending the hearings. Another $23,000 was for the attorneys' collective time to prepare their billing records and declarations in support of the second fee petition.

Patrick argued that the trust should pay his ongoing defense fees and costs because "it would be unjust to force [him] to continue to sell assets and borrow funds to the financial detriment of his family and him, to fend off Michelle's relentless attacks."

Michelle opposed the second fee petition and requested the court defer any additional fee award until the issues on appeal were adjudicated. Michelle specifically objected to the "duplication of work between the two law firms and multitude of attorneys, paralegals and highly-paid staff that continue to represent [Patrick]."

On November 21, 2008, the trial court, without explanation, ordered the current cotrustees to reimburse Patrick over $175,000 in attorney fees and an additional $2,500 in trustee fees. The court also granted Patrick's request for future attorney fees: "The trustees are further ordered to pay, on a monthly basis, Patrick Donahue's future reasonable attorney fees, costs, and trustee

fees incurred in connection with this action, subject to final approval by the court at the conclusion of the litigation and reimbursement by Patrick Donahue of any disallowed amounts."[6]

Both sides objected to the trial court's failure to specify how it arrived at the amount of the fees and costs and requested the court to provide reasons for its determination. In his postorder motion for reconsideration, Patrick stated that he "does not know how or for what reason the Court arrived at the precise reimbursement amount of $175,540.83. If the Court declines to reconsider its ruling, in the alternative, Patrick respectfully asks the Court to clarify its award of attorney fees and costs to Patrick by specifying which fees and/or costs have been denied so that the Court's decision may be understood by the parties." The court declined to reconsider or further clarify its fee order, and Michelle timely filed a notice of appeal.

D.   *Consolidation Orders*

After all three appeals were fully briefed, we severed the second appeal from the first appeal and consolidated it instead with the third appeal to resolve all issues concerning attorney fees in a single opinion.

II

DISCUSSION

A.   *The Record Is Unclear Whether the Trial Court Exercised Its Discretion to Determine Whether the Requested Fees Reasonably and Appropriately Benefitted the Trust*

■   Even after his resignation as a trustee, Patrick retained the fiduciary responsibility "to complete and defend his accounting until settled by the court." (*Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 235 [88 Cal.Rptr.3d 494] (*Kasperbauer*).)

■   Because he acted on the trust's behalf in retaining attorneys to pursue this litigation, Patrick claims the trust is obligated to pay the reasonable attorney fees. "Attorneys hired by a trustee to aid in administering the trust are entitled to reasonable fees paid from trust assets. Preparing the accounting and responding to the beneficiaries' objections to that accounting are aspects of trust administration." (*Kasperbauer, supra,* 171 Cal.App.4th at p. 235; see

---

[6] The open-ended fee orders preclude a precise accounting of the trust's legal fees to date. According to Michelle's opening brief in the third appeal (G041503), the amount in the original fee order "combined with the amount billed by the current trustees' attorneys and by the trust's attorney, exceeds $9,000,000, which was charged to the trust's corpus."

*Estate of Beach* (1975) 15 Cal.3d 623, 644 [125 Cal.Rptr. 570, 542 P.2d 994] (*Beach*) [trustee entitled to reimbursement from trust for reasonable legal expenses incurred in defending trust in capacity as trustee]; *Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, 97 [80 Cal.Rptr.2d 166] (*Hollaway*) [successful defense of allegations against trustee benefited trust by eliminating questions regarding whether the trustee had properly administered trust]; *Estate of Cassity* (1980) 106 Cal.App.3d 569, 574 [165 Cal.Rptr. 88] [former trustee entitled to reimbursement of legal expenses where he successfully defended himself from surcharge for conduct determined to have been proper]; see also Prob. Code, § 16247 [trustee has power to retain attorneys to advise or assist the trustee].)

As Patrick points out, Michelle does not disagree with these propositions in the abstract. "Michelle does not dispute that 'attorney fees and litigation costs incurred in the trustee's successful defense of an action brought by the beneficiary are recoverable.' "

Michelle vigorously challenges, however, the manner in which Patrick exercised his fiduciary responsibilities in retaining multiple sets of attorneys from three major law firms to pursue this litigation. Michelle also contests the reasonableness of their billings, particularly where the current trustees also had retained two additional attorneys to represent the trust in the litigation under a common defense agreement.

■ Trustees have a duty "to administer the trust solely in the interest of the beneficiaries." (Prob. Code, § 16002, subd. (a); see *Schwartz v. Labow* (2008) 164 Cal.App.4th 417 [78 Cal.Rptr.3d 838] (*Schwartz*) [trustee imprudently spent $1.3 million in trust funds to obtain partially collectible judgment of $700,000].) They should incur and pay expenses, including legal expenses, which are "reasonable" in amount and "appropriate" to the "purposes and circumstances of the trust." (Rest.3d Trusts, § 88, boldface omitted; see also Prob. Code § 15684.) To recover fees and costs, trustees must subjectively believe the expense was necessary or appropriate to carry out the trust's purposes, and they must show their beliefs were objectively reasonable. (See *Conservatorship of Lefkowitz* (1996) 50 Cal.App.4th 1310, 1314 [58 Cal.Rptr.2d 299] (*Lefkowitz*).)

Trustees should carefully document any request for reimbursement of attorney fees. "While recordkeeping is important in all aspects of administration, it is imperative in trust litigation that records support the contention of the trustee and others that the trust should pay the disputed compensation and fees." (1 Cal. Trust Administration (Cont.Ed.Bar 2d ed. 2009) § 9.49, p. 510.)

We apply an abuse of discretion standard to the trial court's decision granting Patrick's fee requests payable from the trust's assets. (*Kasperbauer,*

*supra*, 171 Cal.App.4th at p. 234.) There are limits to the scope of our deference, however. "When the record is unclear whether the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning. [Citations.]" (*In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1052 [2 Cal.Rptr.3d 358] [reversing attorney fee award to putative class members].) "[D]iscretion must not be exercised whimsically, and reversal is appropriate where there is no reasonable basis for the ruling or the trial court has applied 'the wrong test' or standard in reaching its result." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239 [66 Cal.Rptr.3d 680] [reversing attorney fee award of nearly $500,000 in sexual harassment lawsuit where no showing the trial court considered threshold factors for fee enhancement].) "A trial court's award of attorney fees must be able to be rationalized to be affirmed on appeal." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 [100 Cal.Rptr.3d 152] (*Gorman*).)

In *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615 [98 Cal.Rptr.2d 388], the appellate court considered whether the trial court properly exercised its discretion in applying a multiplier to an attorney fee award. In reversing the order, the court complained that appellate review was "complicated by the terse nature of the trial court's ruling itself, which [gave] virtually no explanation for the basis of the substantially enhanced award of fees and costs . . . ." (*Id.* at p. 624.) Lacking a "more complete explanation," the court observed "the order is subject to question regarding the factual basis of the exercise of discretion made." (*Ibid.*; see also *Garcia v. Santana* (2009) 174 Cal.App.4th 464, 477 [94 Cal.Rptr.3d 299] [reversing statutory fee-shifting order in a landlord-tenant dispute because "we are unable to determine whether the court exercised its discretion to balance all of the relevant factors against each other . . ."]; *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 689 [98 Cal.Rptr.2d 263] [reversing fee award for recalculation by trial court, noting that "blocked-billing entries render it virtually impossible to break down hours on a task-by-task basis . . ."].)

■ Probate courts have a special responsibility to ensure that fee awards are reasonable, given their supervisory responsibilities over trusts. "Presented with a section 17200 petition to settle an account, 'the probate court has a duty *imposed by law* to inquire into the prudence of the trustee's administration.' " (*Schwartz, supra*, 164 Cal.App.4th at p. 427, original italics.) "[A]ttorney fees deriving from probate court litigation are subject to concerns sufficiently unique, we believe, to distinguish them from fees generated in ordinary civil litigation." (*Hollaway, supra*, 68 Cal.App.4th at p. 98.) "Thus, ' "[t]he underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and service to the trust." ' " (*Lefkowitz, supra*, 50

Cal.App.4th at p. 1314.) Because probate courts have wide powers and responsibilities to preserve trusts under their supervision, they should make clear the basis for fee awards and thereby facilitate meaningful appellate review. "All too often this responsibility [to supervise trusts] is abdicated by granting whatever fees are sought in the petition." (*Estate of Nazro* (1971) 15 Cal.App.3d 218, 223 [93 Cal.Rptr. 116] [trustee sought excessive compensation for attorney services].)

■ In reviewing whether the trial court abused its discretion, "we are mindful that '[t]he underlying principle which guides the court in allowing costs and attorney[] fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust.' [Citation.]" (*Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1461 [33 Cal.Rptr.3d 603] (*Terry*) [reversing fee award to trustee].) "If litigation is necessary for the preservation of the trust, the trustee is entitled to reimbursement for his or her expenditures from the trust; however, if the litigation is specifically for the benefit of the trustee, the trustee must bear his or her own costs incurred, and is not entitled to reimbursement from the trust." (*Ibid.*)

The trial court's April 29 order granting attorney fees to Patrick is notable for what it does not say. Not only is there no explanation for why the trial court concluded Patrick reasonably incurred attorney fees, but the court did not expressly specify the amount of the fee award. Instead, the court merely stated that it would allow the amount "prayed for in the petition with [several specified] exceptions."

In the particular circumstances here, the trial court's generic order undermines the process of appellate review. Comparing the court's pithy explanation to the size and complexity of the fee request, with the full billing records consuming more than 800 pages of the record on appeal, we cannot tell whether the court exercised its discretion to carefully review the attorney documentation and determine their reasonableness and necessity, particularly in relationship to the trust's interest and purposes.

The November 2008 fee order is equally cryptic. While the trial court did specify the amount of the fee award, even Patrick complained about the court's failure to explain why and how it reached its conclusion. "It is the essence of arbitrariness to make an award of attorney fees that cannot be justified by the plaintiffs' request, the supporting bills, or the defendant's opposition." (*Gorman, supra,* 178 Cal.App.4th at p. 101 [reversing fee award

in contractual fee-shifting case where, "after much puzzlement and frustration," appellate court was unable to determine "any mathematical or logical explanation" for trial court's reasoning in issuing fee award].)[7]

Besides thwarting meaningful appellate review, the lack of detail and explanation in the orders raises the concern the trial court utilized an overly deferential approach to the fee request. A trial court may not rubberstamp a request for attorney fees, but must determine the number of hours *reasonably* expended. " 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' " (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) "The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320 [81 Cal.Rptr.3d 866] (*Christian Research*); see also *Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816 [5 Cal.Rptr.2d 770] [party seeking attorney fees has the "burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount' "].)

Reasonable compensation does not include compensation for " 'padding' in the form of inefficient or duplicative efforts . . . ." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131–1132 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*); see also *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 991 [addressing the "amount of time an attorney might reasonably expect to spend in litigating such a claim"].) "A reduced award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections." (*Gorman, supra*, 178 Cal.App.4th at p. 101.)

In *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834 [112 Cal.Rptr.2d 284], the Court of Appeal reversed a fee award of $215,000 in a class action lawsuit because of the "unjustified duplication of work that took place" where numerous attorneys passively appeared on behalf of a single client. While there was no issue regarding the lawyers' honesty in recording their time, "Duplication was, indeed, the hallmark of the coordinated proceeding" with multiple hours spent in correspondence and phone calls

---

[7] At oral argument, Patrick's counsel speculated that the trial court had stricken Loeb & Loeb's November 2007 invoice from the second fee award believing that the November 2007 invoice should have been included in the first fee petition. If so, then Patrick's own theory would have the trial court awarding the *entirety* of the remaining fee request, without reduction.

between the different law firms representing the parties claiming fees. (*Id.* at p. 840.) Under these circumstances, "the *unquestioning* award of generous fees may encourage duplicative and superfluous litigation and other conduct deserving no such favor." (*Id.* at p. 839.)

There are no declarations in the record to explain Patrick's decision to retain two major law firms (Loeb & Loeb and Jones Day) to *concurrently* represent him (each with supervising partners and associates) in this court trial. "However, just as there can be too many cooks in the kitchen, there can be too many lawyers on a case." (*Guckenberger v. Boston Univ.* (D.Mass. 1998) 8 F.Supp.2d 91, 101.) Even after Loeb & Loeb became lead attorneys for Patrick, Scott Bertzyk at Greenberg Traurig billed some $171,000, while Jones Day billed more than $1 million.

Understandably, these law firms brought with them their own supervising, support and administrative infrastructure, but simultaneous representation by multiple law firms posed substantial risks of task padding, over-conferencing, attorney stacking (multiple attendance by attorneys at the same court functions), and excessive research. (See *Christian Research, supra,* 165 Cal.App.4th at p. 1326 ["Indeed, the five attorneys [defendant] deployed on the motion appear to have expended [undue] time telephoning, conferencing, and e-mailing each other . . . supporting the trial court's conclusion the matter was overstaffed."].)[8]

■ By contrast to Patrick's large litigation team, two attorneys represented Michelle. A comparative analysis of each side's respective litigation costs may be a useful check on the reasonableness of any fee request. "The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required." (*Ramos v. Lamm* (10th Cir. 1983) 713 F.2d 546, 554.)

■ Although we cannot tell whether the trial court distinguished between fees expended to protect Patrick's personal interests from those of the trust, it is plausible the court may have decided that Michelle, rather than Patrick, should reap the consequences of the aggressive litigation tactics she had sown. But California has declined to adopt a prevailing party outcome for the award of attorney fees in surcharge actions between trustees and beneficiaries. "A contrary rule would unduly deter contestants such as these from questioning the stewardship of executors and administrators through proceedings

---

[8] Although we have not engaged in a detailed examination of the billing invoices (a task we leave on remand to the trier of fact, perhaps aided by expert testimony), we note some common entries: "Confer with team," "Prepare for and attend strategy meeting . . . ," "[C]onferences with co-counsel," "Participated in meeting with litigation team . . . ," "Telephone conference with [co-counsel]," "Meeting with [co-counsel] at Jones Day in Irvine . . . ."

brought in good faith." (*Beach, supra,* 15 Cal.3d at p. 646 [trial court exceeded its authority in ordering that trustee's attorney fees be charged against unsuccessful contestants' trust shares rather than against all property otherwise distributable to the trust].)

At oral argument, Patrick offered a "bet the farm" rationale for his litigation decision to simultaneously retain a legal team of seven to eight lawyers with "primary activity and involvement" from three major law firms. As counsel explained, "This was a 'bet the farm' case where [the beneficiaries] were seeking $20 to $25 million from our client—his entire stake could be wiped out if he lost the case." Counsel further explained that Patrick incurred the attorney fees without any assurance he would receive reimbursement from the trust. "Every single dollar that Patrick incurred was at risk and he knew it was at risk."

But that is precisely the point. It was *Patrick's* "farm" that was at stake, not the trust's. Faced with the prospects of ruinous exposure, Patrick may have decided to leave no field unfurrowed and to act without regard to cost in protecting his own personal interests. For example, at oral argument, counsel justified Patrick's decision to retain rather than replace his original attorneys at Jones Day and Greenberg Traurig to preserve "institutional memory." Counsel further explained that while some of Patrick's trial attorneys may have "appeared to do nothing" at trial, they actually served as reserves to cross-examine witnesses that Michelle had placed on her attorney list, but ultimately decided not to call.

■ Such a spare-no-expense strategy calls for close scrutiny on questions of reasonableness, proportionality and trust benefit. "Consequently, where the trust is not benefited by litigation, or did not stand to be benefited if the trustee had succeeded, there is no basis for the recovery of expenses out of the trust assets." (*Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1230 [128 Cal.Rptr.2d 742].) Patrick's defense by so many top-flight lawyers may have benefitted Patrick, but was it also reasonable and beneficial to the trust? Did Patrick demand a Rolls Royce defense when a prudent trustee could have arrived at the same destination in a Buick, Chrysler or Taurus?

The Restatement Third of Trusts expressly recognizes the need for trustees to incur costs proportional to the trust's objectives. "The comprehensive powers of a trustee (§ 85) include the power to incur and pay expenses in the course of trust administration, but the exercise of this power is subject to the trustee's fiduciary duties (§ 70). *Implicit in a trustee's fiduciary duties is a*

*duty to be cost-conscious.*" (Rest.3d Trusts, § 88, com. a, p. 256, italics added.) " 'Wasting beneficiaries' money is imprudent.' " (*Id.*, reporter's notes, com. b, p. 261.)[9]

■ Although the veteran jurist here may have had these principles in mind, we find nothing in the fee orders of April and November 2008 to assure us the trial court analyzed these factors. This is not sufficient. The trial court's assessment of reasonableness depends not simply upon what fees were reasonably incurred in representing Patrick, but also upon whether such fees were reasonably and prudently incurred for the trust. We therefore reverse and remand the case to the trial court for further consideration and amplification of its reasoning on the fee awards.

### B. *The Trial Court Has Yet to Exercise Its Discretion to Review the Reasonableness of Patrick's Ongoing Attorney Fees and Should Do So on Remand*

In her last-filed appeal (G041503), Michelle raises two objections to the trial court's award of prospective attorney fees to Patrick on an ongoing basis. The prospective fee award was filed during the pendency of Michelle's appeals in G040259 and G040628.

Michelle contends the trial court lacked jurisdiction to issue this new fee award while her appeals were pending and before these cases are transferred back to the trial court by the issuance of a remittitur.

■ We disagree. As a probate court with supervisory responsibilities over the trust, the trial court retained the power to make further orders involving the trust. (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 341 [54 Cal.Rptr.3d 185] ["As we were aptly reminded by counsel at oral argument (quoting baseball great Yogi Berra), ' "It ain't over till it's over." ' "].) " '[T]he ongoing and changing nature of trust administration' may require ongoing proceedings 'for instructions, to settle accounts, to fix compensation . . . [and] to allow . . . compromise or settle claims.' " (*Id.* at p. 352.)

Michelle also contests Patrick's ability, as a former trustee, to obtain a fee award on a so-called "go-forward" basis. As Michelle argues, "If Patrick is

---

[9] Insofar as this litigation involves excessive fee issues, Patrick has not participated "as a neutral trustee to defend the trust and protect its assets"; rather, he has consistently pursued his own interests, to the potential detriment of the trust corpus. (*Terry, supra,* 131 Cal.App.4th at p. 1464; cf. *In re Fidelity/Micron Securities Litigation* (1st Cir. 1999) 167 F.3d 735, 738 [awards of attorney fees incurred in litigating the magnitude of attorney reimbursement in common fund cases should "rarely, if ever, be bestowed" because the fee award runs counter to the interests of the fund].)

entitled to fees at all, as a former trustee, the court had authority to award retroactive fees to Patrick, but not prospective fees."

We concur with the observation, made by Patrick's counsel at oral argument, that this issue "probably is moot" because the case is "winding up towards its end." Moreover, as Patrick's counsel further emphasized, the trial court has not yet reviewed those portions of the November 21 order directing the current trustees to pay Patrick's prospective attorney fees from trust assets.

As we have explained, the standard is not whether Patrick's fees were reasonably incurred for his own benefit, but whether they were reasonably incurred *for the benefit of the trust*. " ' "The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust." [Citation.]' " (*Thomas v. Gustafson* (2006) 141 Cal.App.4th 34, 44 [45 Cal.Rptr.3d 639].)

We do not know whether the current trustees have paid any of Patrick's ongoing attorney fees following the fee order of November 2008, although they were ordered to do so on a monthly basis. To the extent they have, Michelle is entitled to put Patrick to his proof on remand, with appropriate discovery and a hearing regarding their reasonableness and whether they were necessarily incurred for the benefit of the trust, or for Patrick's personal benefit.

C. *On Remand, the Trial Court Should Revisit Michelle's Request to Engage in Limited Discovery, Including the Retention of an Attorney Fee Expert, on the Appropriate Amount of Attorney Fees for the Benefit of the Trust*

Since we remand the attorney fee orders for a new hearing, Michelle should receive an opportunity to renew her request for limited discovery regarding attorney fee issues. Although equivocal ("I'm kind of torn in that regard"), the trial court initially concluded that discovery simply would be too costly given its limited utility: "I just don't know that it will do much good by continuing the bleeding by engaging in further discovery to depose lawyers, perhaps to get another lawyer to look at what they did and say they charged too much. I just don't know how effective that would be."

In *City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 934 [32 Cal.Rptr.3d 384], the trial court denied a bank's request for discovery in connection with a dispositive law and motion hearing on similar grounds, finding that discovery was neither necessary nor helpful.

The Court of Appeal found no legal basis to support the trial court's denial of discovery, and overturned the order.

■ The size and complexity of Patrick's fee requests may merit discovery, particularly expert assistance, which cannot be flatly denied simply on the basis of expediency. "Efficiency cannot be favored over justice." (*Estate of Meeker* (1993) 13 Cal.App.4th 1099, 1106 [16 Cal.Rptr.2d 825]; see also *Fatica v. Superior Court* (2002) 99 Cal.App.4th 350, 353 [120 Cal.Rptr.2d 904] [expediency not adequate reason to preclude petitioners "from presenting critical expert opinion testimony"].)

In *Ketchum*, the California Supreme Court rejected an appellant's contention that the trial court " 'rubber stamped' " a fee award in an anti-SLAPP (strategic lawsuit against public participation) case by noting with approval that the trial court permitted deposition testimony and testimony by a fee expert. (*Ketchum, supra*, 24 Cal.4th at p. 1140.) Under these circumstances, the court concluded, "[w]e have no reason to doubt that the superior court conducted an independent assessment of the evidence presented." (*Ibid.*)

It is true that judges themselves are deemed to be experts on the value of legal services, and may rely on their own experience about reasonable and proper fees, without resort to expert testimony. " 'In many cases the trial court will be aware of the nature and extent of the attorney's services from its observation of the trial proceedings and the pretrial and discovery proceedings reflected in the file.' " (*Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559 [227 Cal.Rptr. 354].)

But a judge's litigation experience may not extend to many critical aspects of fee awards pertaining to prudent trust administration, including management of complex litigation, legal auditing, and legal cost control. As one example, Patrick appears to have requested substantial sums (into six figures) simply to put together the legal invoices. Should some or all of these expenses have been attributable to overhead already covered within the attorney's hourly rates? Is time spent to review or limit excessive attorney bills itself justifiably billable? When multiple law firms are involved in concurrently providing legal representation to a single client, what procedures appropriately guard against duplicative or excessive fee requests?

In this area, the testimony or declaration of fee experts may assist the trial court, on remand, in determining the appropriate amount of reimbursement to Patrick for his efforts, as a former trustee, to benefit the trust. (See also *In re Cendant Corp. Litigation* (D.N.J. 1998) 182 F.R.D. 144, 150 ["It is no insult to the judiciary to admit that a court's expertise is rarely at its most formidable in the evaluation of counsel fees . . . ."].) On remand, we leave it to

the sound discretion of the trial court to fashion appropriate discovery regarding proper and reasonable levels of legal services for the benefit of the trust.

## III

### Disposition

We reverse the orders of April 29, 2008, and November 21, 2008, and remand the matter to the trial court to conduct additional proceedings to determine the amount of attorney fees plaintiff and respondent Patrick Donahue is entitled to receive.

In the interests of justice, costs on appeal on these two consolidated appeals, as well as the appeal in G040259, are awarded to appellant.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.