Filed 6/28/13  Polizzi v. Diebner CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| PATRICIA POLIZZI,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>WADE DIEBNER et al.,<br><br>       Defendants and Respondents. | A137306<br><br>(Contra Costa County<br>Super. Ct. No. CIVMSC11-02663) |

     Plaintiff Patricia Polizzi appeals from the trial court's postjudgment order awarding her prevailing party attorney fees of $3,840, instead of the $31,534.50 she requested.  The trial court ordered this award without explanation and for the exact amount of fees estimated by plaintiff for the initial preparation of her attorney fee motion.  We conclude the record is unclear whether the court determined this award by employing the applicable legal principles.  Therefore, we reverse the court's order, and remand the matter to the trial court for further consideration, including of the minimum reasonable attorney fees required to pursue a breach of contract action for $10,000 in damages, and amplification of its reasoning.

## BACKGROUND

     This appeal is from the second of two lawsuits by plaintiff against defendants.  In the first, the parties, along with Joseph Polizzi and Rosalia Polizzi, entered into a written settlement agreement that resulted in plaintiff's dismissal with prejudice of her claims against defendants.  Pursuant to the agreement, defendants Wade Diebner and Khrista Deibner (collectively, Diebners) were required to pay plaintiff a total of $80,000, with

1

$40,000 paid on or before March 15, 2011, and $5,000 per month for eight months, until November 15, 2011.

The Diebners did not make the last two months' payments to plaintiff, purportedly because plaintiff had defamed them. Instead, they offered to pay the remaining $10,000 conditioned on the settlement agreement's amendment to make clear all claims between plaintiff and the Diebners were resolved because of "the way the settlement agreement is drafted and the disputed issues that remain between the Diebners and Joe and Rose Polizzi."

Rather than accept this conditional offer, plaintiff sued defendants in a second action in November 2011. She alleged defendants had participated in the pilfering of investment funds from Polizzi, for which plaintiff, Joe, and Rose Polizzi (collectively, Polizzis) had sued in the previous lawsuit. She acknowledged that, pursuant to the settlement agreement, the Diebners made certain payments to her, but further alleged that the Diebners withheld $10,000 based on false claims of misconduct by plaintiff, which they refused to substantiate or identify. Plaintiff sued for rescission of the settlement agreement based on failure of consideration, rescission based on promissory fraud, breach of contract, conversion, unjust enrichment, the negligent infliction of emotional distress, unfair business practices, and breach of fiduciary duty.

A few months after filing suit, plaintiff filed an application for a right to attach order and an order for issuance of a writ of attachment in the sum of $500,000, which defendants opposed. She contended that she was a widow who had lost $500,000 of her life savings due to unauthorized investments, in which defendants were involved.

The court rejected plaintiff's request for a writ in the sum of $500,000 because it was based on the claims she had made in her first lawsuit regarding defendants' alleged theft and unauthorized use of her funds. The court determined these claims were alleged again in most of her new causes of action. Since plaintiff had dismissed her previous claims with prejudice, these new causes of action were barred by the doctrine of res judicata and could not be revived by rescission of the settlement agreement.

2

However, the court found that plaintiff had established the probable validity of her claims for rescission and breach of contract because "[t]here is no dispute that defendants stopped making payments under the settlement agreement in October 2011. Defendants never produced any evidence for their alleged justification for stopping payments, *that is*, plaintiff's alleged disparagement of defendants, and defendants have submitted no evidence of the disparagement in this motion. [Citation.] [¶] . . . [¶] This is not a situation of mere delay in performing under the contract. [Citations.] Defendants expressed their intention of no longer complying with the settlement agreement and making no further payments because they believed plaintiff had breached the agreement." Therefore, the court granted a writ of attachment based on plaintiff's breach of contract claim for $10,000, the amount remaining to be paid by the Diebners to plaintiff pursuant to the settlement agreement. The court also allowed for an amount to cover costs and allowable attorney fees as determined by the court, based on the settlement agreement's providing for costs and fees to the prevailing party " 'for any action taken to enforce the terms' " of the settlement agreement.

Soon thereafter, the parties stipulated to a judgment in favor of plaintiff and against defendants in the amount of $10,000, plus $610 in court costs, with attorney fees as an item of costs to be determined on motion to the court. After entry of judgment, defendants paid these amounts to plaintiff.

Plaintiff then moved for an award of $31,534.50 in attorney fees and $1,229.96 in non-statutory costs pursuant to Civil Code section 1717 (section 1717). This included $27,694.50 in attorney fees incurred before preparation of this motion, and $3,840 in estimated fees for preparation of the motion itself, not including fees for preparing the reply brief and appearing at hearing. Plaintiff's attorneys provided extensive documentation of their fees, which were billed based on the time spent and rates applied for the attorneys and staff who worked on the case. They also submitted documentation supporting their contention that their rates were consistent with rates charged by comparable firms in the area.

3

After hearing, the trial court ordered that plaintiff be awarded $3,840 in fees and nothing in non-statutory costs, without stating any reasons for its ruling. Plaintiff filed a timely notice of appeal from this order.

## DISCUSSION

Plaintiff argues the trial court's award of only $3,840 in attorney fees—an amount equal to her estimated fees for the initial preparation of the attorney fees motion itself—was plainly inadequate, and not based on a determination of whether her request for $31,534.50 was reasonable; instead, it was due to "a simple error which [the court] was not willing to correct or admit." Plaintiff argues she is entitled to her requested fees pursuant to section 1717 because she prevailed in the action and incurred fees for more than the rescission of the settlement agreement, which plaintiff appears to concede was not a proper basis for an award of fees. Plaintiff asks this court to award her all the fees she requested or reverse the court's order and remand this matter with instructions for the appropriate calculation of an award. Defendants contend the court's award of $3,840 was reasonable and well within the court's broad discretion.

We conclude the record is unclear whether the trial court's award is consistent with the applicable legal principles; indeed, it appears the court based its award on plaintiff's estimated fees for the initial preparation of her attorney fee motion, without further analysis. Therefore, we reverse the court's order, and remand the matter to the trial court for further consideration and amplification of its reasoning.

In the action below, plaintiff contended defendants had breached the settlement agreement, which states in relevant part, "For any action taken to enforce the terms of this agreement, the prevailing party shall be entitled to his or her costs and attorneys' fees." This provision makes possible the recovery of attorney fees by a prevailing party in an appropriate action pursuant to section 1717, which provides in relevant part, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not,

4

shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).)

Pursuant to section 1717, "the trial court has broad authority to determine the amount of a reasonable fee. [Citations.] . . . 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group, Inc*).)

Notwithstanding this broad discretion, "the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. . . . The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*PLCM Group, Inc*., *supra*, 22 Cal.4th at p. 1095.)

"After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure.' [¶] . . . The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' [Citation.] Although the terms of the contract may be considered, they 'do not compel any particular award.' " (*PLCM Group, Inc*., *supra*, 22 Cal.4th at p. 1095-1096.)

"The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.) Also, " '[w]hen the record is unclear whether

5

the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning. [Citations.]' [Citation.] '[D]iscretion must not be exercised whimsically, and reversal is appropriate where there is no reasonable basis for the ruling or the trial court has applied "the wrong test" or standard in reaching its result.' [Citation.] 'A trial court's award of attorney fees must be able to be rationalized to be affirmed on appeal.' " (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 269.)

In the present case, the trial court did not explain why it awarded plaintiff only an amount equal to her estimated fees for the initial preparation of her attorney fees motion.[1] There is "no general rule requiring trial courts to explain their decisions on motions seeking attorney fees. In cases where the award corresponds to either the lodestar amount, some multiple of that amount, or some fraction requested by one of the parties, the court's rationale for its award may be apparent on the face of the record, without express acknowledgment by the court of the lodestar amount or method." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101.) Unfortunately, this is not the case here. The court's fee award is about 12 percent of the amount plaintiff requested, a fraction that is not ascertainable from the logic of the court's rulings, nor suggested by either party. We might be able to conclude the court acted within its broad discretion if it had provided an explanation, but without it, we are unable to rationalize its award from the record or defendants' opposition to the motion.

There is no question the trial court found plaintiff to be the prevailing party regarding her breach of contract claim. This is reflected in the court's decision to award *some* fees to plaintiff, as well as its writ of attachment order, in which it found plaintiff was likely to prevail on her rescission and breach of contract actions and granted a writ of attachment for $10,000. In that order, the court also stated that defendants stopped

---

[1] Fees incurred in preparing an attorney fees motion are themselves allowable as part of an attorney fees award. (See *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321 [indicating that ordinarily such fees should be included in an attorney fees award].)

6

making payments to plaintiff without producing any evidence justifying doing so, and ruled plaintiff was entitled to recover allowable attorney fees as determined by the court.

Also, there is no indication the trial court found that plaintiff's attorneys billed for unreasonable amounts of time spent on the tasks conducted or at unreasonable rates, nor have defendants argued that they did. We found nothing unreasonable in our own examination of plaintiff's attorneys' documentation of the bases for the fees they charged. There appears nothing unreasonable about the staffing of the case, the amount of time spent on the various litigation activities conducted, or the hourly rates charged. Nor does there appear anything unreasonable about the nature of the tasks pursued; the record indicates that over a period of about a year, the fees were largely due to plaintiff's attorneys preparing and filing a complaint, serving and reviewing some written discovery, moving for a writ of attachment papers, working on the stipulated judgment, and moving for attorney fees. These are not uncommon or unreasonable practices in such a case. While the trial court could find some aspect of these activities to be unreasonable, they do not appear to be so on the face of the record.

Defendants' arguments to the trial court in opposition to plaintiff's attorney fee motion also do not provide a sufficient reasoning for the court's $3,840 award. First, defendants argued that the settlement agreement's fee provision did not apply to rescission claims because the relevant contractual provision and section 1717 provide only for the recovery of fees for the enforcement of the agreement, and not its rescission, citing *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, and plaintiff appears to have conceded the issue in her reply. While this may or may not be the case,[2] defendants' argument regarding plaintiff's breach of contract claim was rightly rejected

---

[2] This issue is not before us and, therefore, we do not determine it. We only note that the case cited by defendants below, *Exxess Electronixx v. Heger Realty Corp.*, *supra*, 64 Cal.App.4th 698, did not involve a rescission claim. In our independent research, we have found that, in general, while "an action for fraud seeking damages sounds in tort, and is not 'on a contract' for purposes of an attorney fee award," "where the plaintiff's claim instead seeks rescission based on fraud, the courts have concluded such claim does sound in contract and permits the award of fees." (*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 549.)

7

by the trial court (as indicated by its award of some fees to plaintiff). Defendants argued they had tendered the amount owed before the complaint was filed, but the record indicates this tender was conditioned on a further amendment of the settlement agreement and, therefore, was not an offer to perform. As plaintiff points out, "a tender must be unconditional, and an unwarranted condition annexed to an offer to pay is in effect a refusal to perform." (*Wiener v. Van Winkle* (1969) 273 Cal.App.2d 774, 782; see also Civ. Code, § 1494 ["An offer of performance must be free from any conditions which the creditor is not bound, on his part, to perform"].)

Second, defendants argued below that plaintiff was not the prevailing party because she did not succeed in her "primary objective" of rescission, and only obtained a judgment for $10,000, which was tendered to her before she filed suit. This is not a basis for the court's fractional award either. The court clearly found plaintiff was a prevailing party. It also indicated in its writ of attachment order that her claim for rescission had merit, at least regarding the $10,000 owed by defendants.

Third, defendants argued that plaintiff's request for $31,534.50 was unreasonable as a matter of law, because she unreasonably pursued damages of $500,000 based on claims she had raised and dismissed with prejudice in the prior lawsuit, and which the court had determined in its writ of attachment order she was barred from pursuing based on the doctrine of res judicata. They did not suggest what would be a reasonable amount, although they argued at the hearing below that the court's tentative award of $3,840 was "extremely generous," considering that plaintiff recovered only $10,000.

It may be that the trial court concluded that plaintiff's litigation strategy was dominated by an unreasonable pursuit of exorbitant or plainly unattainable damages, and/or that the amount of the judgment by itself justified so small an attorney fees award. However, this is conjecture on our part, given the record. The court did not explain how it arrived at the figure of $3,840 using the required lodestar method, or on what basis it concluded that this was a reasonable award under the circumstances. As we have already discussed, the number itself suggests that the court did *not* engage in such an analysis, but instead merely selected the exact amount estimated by plaintiff as her fees for the initial

8

preparation of her attorney fee motion without further analysis. More is required. (*Donahue v. Donahue*, *supra*, 182 Cal.App.4th at p. 269.) Therefore, we must reverse the court's order and remand the matter for further consideration.

Given our remand, we also note that, even if we were to conclude that the court considered much of plaintiff's litigation strategy to be unreasonable and factored in the amount of the judgment in its thinking of what attorney fees were reasonable, the amount the court awarded, $3,840, is arguably inadequate on the face of the record. As we have discussed, the court's rulings indicate it concluded plaintiff was the prevailing party on her breach of contract claim for $10,000 and nothing in the record indicates the court thought she acted inappropriately in pursuing this claim via legal representation. Even if she recovered a very small percentage of what she sought, plaintiff nonetheless was subject to the realities of what it costs to pursue such a claim in court, no matter the amount involved. Given these realities, the court's $3,840 award, rather than enabling plaintiff to prevail, resulted in her losing a considerable amount of money.

Specifically, plaintiff's attorneys' billing records indicate she was charged attorney fees ranging from $280 to $425 an hour. Again, there is no indication in the record that the trial court or defendants found any of these rates to be unreasonable. Assuming for the sake of argument that plaintiff was charged an average hourly billing rate of $325 over the course of the litigation, the court's $3,840 award allowed her to recover her expenses for less than 12 hours of attorney work on her case, which did not even cover all of the time spent by her attorneys on her attorney fee motion. We fail to see from the face of the record how so little time could be found reasonably sufficient for plaintiff, through counsel, to prepare and file a complaint, serve and review some written discovery, move for a writ of attachment, work on the stipulated judgment, and move for attorney fees, none of which appear on their face to have been unreasonable activities for a year-long breach of contract action for $10,000 of damages. Yet, the court's award of only those fees for the initial preparation of plaintiff's attorney fee motion has left plaintiff out of pocket for almost all the fees she incurred. Plaintiff, rather than recover the last $10,000 due on a contract for payment of $80,000, has lost $17,694.50 in

9

uncompensated attorney fees as a result of defendants' breach of contract. This does not seem reasonable. Upon remand, and cognizant of the trial court's broad discretion to consider more than what appears on the face of the record before us, we instruct the trial court to consider, if it has not done so already, the minimum reasonable fees required to pursue a breach of contract claim for $10,000 in determining an appropriate attorney fees award.

## DISPOSITION

The court's attorney fee award is reversed and this matter remanded to the trial court for further proceedings consistent with this opinion. Plaintiff is awarded her costs of appeal.

_____
Lambden, J.

We concur:

_____
Haerle, Acting P.J.

_____
Richman, J.

10