Filed 8/21/14  Arthur v. Davies CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Elmer Snyder Family Trust.<br><br>JANET ARTHUR ,<br><br>　　Petitioner and Appellant,<br><br>v.<br><br>DIANE E. DAVIES etc.,<br><br>　　Objector and Respondent. | 2d Civil No. B249810<br>(Super. Ct. No. PR100166)<br>(San Luis Obispo County) |

　　　　This appeal involves a trust management dispute in which a brother and sister spent nearly $300,000 in attorney fees and costs to compel trust accountings. Janet Arthur (Janet), trustee of the Elmer W. Snyder Family Trust, appeals from an order awarding $178,850.15 attorney fees to her brother/trustee Richard Snyder (Richard), and a second order denying Janet's request for $30,260 trustee's fees and $29,873.38 paralegal fees.  The orders were made following a 13-day trial on two probate petitions for instructions (Prob. Code, § 17200).[1]  We affirm.

---

[1] Unless otherwise stated, all statutory references are to the Probate Code.  We refer to Janet, Richard, and other family members by their first names for the convenience of the reader.

*Facts and Procedural History*

On April 29, 1993, Elmer W. Snyder and Lois P. Snyder created the Elmer W. Snyder Family Trust, naming their children - Janet, Richard, and their brothers Ronald Snyder, Douglas Snyder, and Jeffrey Snyder – as remainder beneficiaries. The trust provided that on the death of the first spouse, the trust assets would be divided into an exemption trust and a survivor's trust. Janet was named the successor trustee of the exemption trust and trustee of two special needs sub-trusts for Jeffrey Snyder who was disabled. After Elmer died in 1993, Lois amended the survivor's trust to name Richard and Janet as successor co-trustees.

When Lois died in 2009, Janet distributed $602,094 from the exemption trust, leaving a balance of $195,000. The survivor's trust had $1,436,911 in assets consisting of a Simi Valley residence, a Canoga Park residence, a house and rental in Atascadero, and cash.

In 2011, Janet petitioned for instructions to sell the Simi Valley and Canoga Park properties. The trial court ordered Janet to sell the Simi Valley property and Richard the Canoga Park Property. Janet obtained a buyer for the Simi Valley property which sold on October 18, 2011.

*Cross-Petitions for Accounting*

Janet filed a new petition to sell the Canoga Park property and to compel Richard to provide an accounting. Richard and his brothers (Ronald and Douglas) filed a cross-petition to remove Janet as co-trustee alleging, among other things, breach of fiduciary duty. Following a three-week trial, the trial court removed Richard as co-trustee of the survivor's trust, leaving Janet as the sole trustee. Diane E. Davies was appointed as the successor trustee of Jeffrey's special needs subtrust. The trial court ordered the Canoga Park property sold, ordered Janet and Richard to file separate accountings, and surcharged Janet and Richard for expenditures that did not benefit the trust.

After the Canoga Park property was sold, Richard and Janet filed separate trust accountings from June 2009 through July 1, 2012. With respect to Richard's

2

accounting, the trial court found that some of the fees and costs did not benefit the trust and surcharged Richard. The court approved the trust payment of $178,850.15 for Richard's attorney fees.

Janet's accounting listed attorney fees and withdrawals for trustee's fees but did not describe what services were provided. Diane Davies, the successor trustee to the special needs subtrust, filed objections and demanded that Janet produce invoices verifying the trustee and attorney services. Janet's exemption trust accounting reported the payment of $29,760 trustee's fees, the bulk of which Janet paid herself on June 4, 2012. The accounting failed to list what services were provided and stated that $71,199.86 attorney fees had been paid but no invoices were attached. On December 20, 2012, Janet produced attorney fee invoices reflecting the payment of $20,873.38 to paralegal Rod Pound. No invoices were produced to explain the nature of the paralegal services.

Prior to the hearing on the final accounting, the trial court requested invoices for all attorney fees and trustee fees.[2] Janet was warned that without the invoices, "the court would be unable to proceed with ordering or confirming payment from the Trust."

On May 3, 2013, the trial court made its final orders on the accountings. Janet requested $73,279.94 attorney fees but was awarded $43,406.56. The $29,873.38 difference was for undocumented paralegal fees. The order stated that the trial court was "deny[ing] approval of all paralegal fees for failure to provide invoices. There will be no allowance of any extra fees for filing these missing documents at a later date." The trial

---

[2] Janet was asked to provide a line item response to Davies' (successor trustee to the special needs subtrust) objections the accounting. The objections were 19 pages long. The trial court noted other problems with the accounting: the exemption trust accounting was "missing" from the court file and petitions; Janet was asked to explain why bank service charges and NSF charges were made against trust accounts; and Janet was asked why $1,125.92 in miscellaneous charges were charged to the survivor's trust for birthday presents, schooling and unknown items for Janet's children.

court disapproved $30,260 for trustee's fees because there were no invoices or time sheets describing the services provided.

*Richard's Attorney fees*

Janet argues that the trial court erred in approving Richard's attorney fees which totaled $178,850.15 after deductions and surcharges.  We review for abuse of discretion.  (*Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 234.)  A trustee is entitled to repayment for expenditures that are properly incurred in the administration of the trust and that benefit the trust.  (§ 15684; *Conservation of Lefkowitz* (1996) 50 Cal.App.4th 1310, 1314.)  "[I]f the litigation is specifically for the benefit of the trustee, the trustee must bear his or her own costs incurred, and is not entitled to reimbursement from the trust. [Citation.]"  (*Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1461.)

Janet complains that Richard's award for attorney fees ($178,850.15) is four times the amount approved for Janet ($43,406.56).  Citing *Donahue v. Donahue* (2010) 182 Cal.App.4th  259 (*Donahue*), Janet argues that the trial court failed to analyze how the fees benefited the trust.  In *Donahue*, a probate court approved a request for $5 million attorney fees incurred by a former trustee in defense of charges of self-dealing and conflict of interest.  (*Id.*, at p. 262.)  The trustee's legal team included eight attorneys from three major law firms who engaged in a "spare-no-expense strategy."  (*Id.*, at p. 273.)  The trial court approved the attorney fee request but made no findings that the fees were reasonably incurred and benefited the trust.  The Court of Appeal reversed on the ground that "[a] trial court may not rubberstamp a request for attorney fees, but must determine the number of hours reasonably expended . . . .  'The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.' [Citations.]"  (*Id.*, at p. 271.)

Unlike *Donahue*, Richard's attorney's fees are well documented by itemized invoices that explain how the services benefited the trust.  In *Donahue*, there was double billing and $5 million in attorney fees for a 14-day trial.  Richard's attorney fees ($178,850.15) was for representation of Richard and his brothers at a 13-day trial that

4

involved a three-year trust dispute. The trial court found: "Miss Sullivan [Richard's attorney] had the harder chore on her hands both administratively and in the course of the trial. You have to remember that each of the brothers were clients. In my thinking that is a more difficult chore. It's going to take more time because you've got a duty to every one of those clients. [¶] I was also particularly struck by the fact that Richard Snyder . . . simply didn't have the right aptitude to do the kind of accounting that the court was calling on him to produce and I think that in itself placed a greater burden on Miss Sullivan to get things in order. It took her as I recall, it took like three different efforts . . . to get the preliminary accounts ready for trial."

Janet argues that Richard's petition for instructions was specious and retaliatory. Those matters were resolved at trial and not pertinent to the trust accounting. The trial judge presided over the trial and post-trial hearings and is deemed to be an expert on the value of legal services in trust matters. (*Donahue, supra,*, at p. 276.) Unlike *Donahue*, the trial court scrutinized the accountings and surcharged Richard and Janet for fees that did not benefit the trust. Janet makes no showing that fees awarded Richard are excessive or unreasonable. (*Donahue, supra,* 182 Cal.App.4th at p. 269.)

*Paralegal Fees*

Janet argues that the trial court abused its discretion in denying her request to be reimbursed for $29,873.38 paralegal fees. The paralegal, Ron Pound, was an independent contractor and submitted invoices to Janet's attorney, who forwarded the invoices to Janet for payment.

It is settled that extraordinary fees may include services performed by a paralegal under the direction and supervision of the attorney. (Prob. Code, § 10811, subd. (b); Ross & Cohen, Cal. Practice Guide (The Rutter Group 2013) Probate, [¶] 16:327, p. 16-98.) To be reimbursed for paralegal fees, the fee request must describe the paralegal's qualifications and describe the services performed and hours spent. (Cal. Rules of Court, rule 7.703(e)(2) & (3).) "Further, the request must state *why it was appropriate* to use the paralegal's services in the case; and demonstrate that the total amount requested for the combined services of the attorney and the paralegal does not

5

exceed the amount that would have been appropriate had the services been performed without the paralegal's assistance. [Citation.]" (Ross & Cohen, Cal. Practice Guide, *supra*, Probate, ¶ 16:327.2. p. 16-99.)

Janet produced no invoices or time sheets for the paralegal fees. The only accounting entries were lump sum payments to Ron Pound. The successor trustee (respondent Diane Davies) objected as did Richard. "[W]here the items are properly objected to, they are put in issue, and the burden of proof is upon the party claiming them as costs. [Citation.]" (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 624.) The trial court reasonably concluded that Janet did not meet her burden of showing the paralegal fees were chargeable to the trust. (See e.g., *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 883.)

Janet claims that her attorney did not realize that the trial court wanted to review the paralegal's invoices. The December 4, 2012 tentative ruling ("Probate Notes") only requested attorney invoices. When the trial court asked to see the paralegal invoices, Janet claimed that Pound was an independent contractor and not required to provide invoices. The trial court did not err in disapproving the request for the paralegal fees. (Cal. Rules of Court, rule 7.703.) " '[I]t is imperative to trust litigation that records support the contentions of the trustee and others that the trust should pay the disputed compensation and fees.' [Citation.]" (*Donahue, supra,* 182 Cal.App.4th at p. 268.)

*Motion for Reconsideration*

Janet argues that 30 pages of paralegal invoices were attached to her motion for reconsideration. The trial court denied the motion because it was not based on new or different facts. (Code Civ. Proc., § 1008, subd. (a); *Blue Mountain Development Co. v. Carville* (1982) 132 Cal.App.3d 1005, 1012-1013.) "'[T]he party seeking reconsideration must provide not only new evidence *but also a satisfactory explanation for the failure to produce that evidence at an earlier time. In short, the moving party's burden is the same as that of a party seeking new trial on the ground of newly discovered evidence . . . .* ' [Citations.]" (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1198.)

6

At the hearing on the motion for reconsideration, the trial court stated: "I was quite surprised when I wasn't getting what I was asking for back in December, You've offered no excuse for that, whatever, put the hearing over twice, to give [Janet] an opportunity to give me whatever it was that was going to support her fees and [P]ounds fees, and you didn't come forward with it in a timely way. [¶] And now you're asking me to forget all that, and give you another shot at it. Well, I'm not going to do it." No abuse of discretion occurred.

### $30,260 Trustee's Fees

Janet next argues that the trial court erred in not approving, as trustee's fees, the $30,260 that Janet paid to herself. The court denied the request because no invoices or time sheets were provided.. Janet concedes that she did not keep time sheets but claims the fees are reasonable based on the duties assumed and results obtained. Had Janet not acted, the trust would not have sold the Simi Valley and Canoga Park properties and Richard would not have filed an accounting.

Prior to the December 6, 2012 hearing, the trial court directed Janet to "provide a detailed service invoice for the trustee fee[s] paid . . . ." No invoices were produced. At a December 20, 2012 hearing, Janet claimed the invoice was attached to her response but no invoices were submitted or filed..

When the motion for reconsideration was argued six months later, Janet claimed that her trustee fees were less than the fees that would be customarily charged by a corporate trustee. The trial court found that regardless of "whether the fee is based upon an hourly rate or a percentage interest [of the trust assets], the Court required invoices of Ms. Arthur's services so that it could assess whether the services of the trustee were of benefit to the trust thereby justifying a charge to the trust for those services. It was incumbent upon the Trustee to provide that information and none [has] ever been provided."

Janet's claim for trustee fees and paralegal fees flaunted the rules for trust accountings. (Cal. Rules of Court, rule 7.703) "Probate courts have a special responsibility to ensure that fee awards are reasonable, given their supervisory

7

responsibilities over trusts." (*Donahue, supra,* 182 Cal.App.4th at p. 269.) Janet makes no showing that the trial court abused its discretion or that the order denying trustee's fees and paralegal fees resulted in a miscarriage of justice. (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1450.)

The judgment (order awarding Richard $178,850.15 attorney fees and order denying Janet's request for $30,260 trustee's fees and $29,873.38 paralegal fees) is affirmed. Respondent, Diane Davies, is awarded costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

Jac A. Crawford, Judge

Superior Court County of San Luis Obispo

_____


Christian E. Iversen, for Appellant.


Dabney Finch, for Respondent Davies.