Filed 1/24/23  Placencia v. Strazicich CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHANIE A. PLACENCIA, | |
| Plaintiff and Respondent, | G059726 |
| v. | (Super. Ct. No. 30-2010-00356226) |
| LISA M. STRAZICICH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, David L. Belz, Judge.  Affirmed.

Bradley R. Kirk & Associates, Inc., and Bradley R. Kirk for Defendant and Appellant.

Bidna & Keys, Howard M. Bidna and Richard D. Keys for Plaintiff and Respondent.

\*          \*          \*

This is the second appeal in this fairly complex probate matter. Ralph Placencia, the decedent, left behind a will, a trust, and a bank account with a right of survivorship in his daughter, defendant Lisa M. Strazicich (Lisa).[1] Ralph's will, however, expressly stated that he did not want the bank account to go to Lisa, but to the trust, where it would be shared among his three daughters. Plaintiff Stephanie A. Placencia (Stephanie), Lisa, and another daughter were all cotrustees of the trust. The trial court decided that Ralph's intent should govern and ordered Lisa to account for the funds to the trust. It also awarded Stephanie attorney fees.

Lisa's appeal of that decision led to our prior published decision in *Placencia v. Strazicich* (2019) 42 Cal.App.5th 730 (*Placencia*). In a nutshell, *Placencia* held that the joint bank account belonged to Ralph's estate, not his trust. We reversed on two issues. First, the trial court had awarded the funds directly to the estate, which we found was improper in the absence of a probate proceeding. Second, given our reversal, we remanded for the court to reassess the attorney fees awarded to Stephanie.

After remand, the court held a hearing on November 17, 2020, and issued various orders. Among other things, the court ordered that Stephanie was entitled to the same amount of attorney fees as originally ordered, directed Lisa to return various monies to the trust, and suspended Lisa as trustee and temporarily appointed Stephanie to that role.

In this appeal, Lisa argues the trial court erred in deciding that Stephanie was entitled to her attorney fees and made various orders outside the scope of the remand from this court. Stephanie argues the court's orders were proper. We conclude that Lisa's arguments are without merit and therefore affirm the court's order.

---

[1] We use first names due to common surnames among some of individuals involved.

I

FACTS

*Underlying Facts*

We draw the relevant historical facts from our prior opinion, *Placencia*, *supra*, 42 Cal.App.5th 730.

"In 1985, Ralph opened what the parties refer to as the Franklin Fund account with an initial deposit of $140,000. Lisa was listed as a co-owner. Lisa's counsel states the paperwork submitted to open the account specifies that it is a joint account with right of survivorship, though the copy in the record is almost entirely illegible. Regardless, Lisa stipulated that the account was opened as a joint tenancy with right of survivorship. Moreover, an account statement from 2009 addressed to Ralph and Lisa bore the acronym 'JT WROS,' which appears to stand for joint tenants with right of survivorship.

"Lisa, who was 23 years old at the time, had no involvement in opening the fund. Ralph told Lisa that he put her on the Franklin Fund, but never had any other discussion with her about it. Lisa never deposited money into the account, all of which, to Lisa's knowledge, came from Ralph. Lisa never withdrew money from the account during Ralph's lifetime. The account paid dividends, which Ralph took during his lifetime.

"Ralph passed away in December 2009. In the months leading up to his death, Ralph had a number of conversations with Henry Rivera, his brother-in-law, which resulted in Henry assisting Ralph to prepare a will and trust, which Ralph executed approximately 11 days before his death. His will left specific directions as to the Franklin Fund account: 'Remove Lisa Strazicich as sole beneficiary of my Franklin Fund. I want the beneficiaries to be Lisa Strazicich, Stephanie A. Placencia and Tina R. Placencia, my three daughters. [¶] I want the Franklin Fund to be placed into my trust

3

fund and then be used to pay off the mortgage of my home in Huntington Beach, CA.' Henry confirmed that Ralph specifically made these requests in their conversations.

"The trust specified that the res would be distributed evenly between Ralph's three daughters, Lisa, Stephanie, and Tina. It specifically disinherited his two sons (one of whom passed away). The trust named Lisa and Stephanie as successor cotrustees after Ralph's death but specified that most important decisions would need Tina's consent as well. At the time of Ralph's death, the trust contained three properties located in California: a residence in Huntington Beach, raw land in Brea, and a residence in Long Beach. Collectively they were valued at approximately $2,215,000.

"In January 2010, about a month after Ralph passed away, Lisa transferred the assets of the Franklin Fund account to an account in her name.

[¶] . . . [¶]

"Meanwhile, the sisters' relationship grew contentious; they could not reach a consensus on the proper disposition of the trust assets. Lisa was performing most of the work administering the trust. Stephanie testified that she had not performed any role as trustee for the first four years after her father passed away. However, she was consulting with Lisa and Tina on major decisions related to the trust.

"In September 2014, Stephanie filed the first of the underlying petitions in her capacity as cotrustee of the trust. She sought an accounting, damages for breach of fiduciary duty, and to remove Lisa as trustee. In December 2014, Lisa filed a petition in her capacity as cotrustee, seeking, among other things, to remove Stephanie as cotrustee, to recover various costs and fees associated with her work administering the trust, and declaratory relief as to the status of the Franklin Fund account. By the time the petitions were filed, most of the property in the trust had been sold and the funds distributed. Only the Long Beach residence and a small bank account were still held in trust.

"The court ultimately trifurcated the trial into three phases. The first phase concerned most of the issues on the merits, including the Franklin Fund issue. The

4

second phase dealt with requests for trustee fees, attorney fees, and other litigation costs. The third phase concerned an accounting of the Franklin Fund account.

"In the first phase the court concluded Ralph's will, as confirmed by Henry's conversations with Ralph, amounted to clear and convincing evidence that Ralph intended to revoke Lisa's right of survivorship in the Franklin Fund account at the time of his death. Consequently, the court ordered Lisa to account for the proceeds of the Franklin Fund account, with Lisa's share in the trust to be reduced by the amount she owes the trust from the Franklin Fund account.

"Also in the first phase, the court rejected several of Stephanie's claims for relief, including: her request to remove Lisa as trustee, her claim that Lisa breached her fiduciary duty by failing to rent the Long Beach residence, her claim for double damages under [Probate Code] section 859 for Lisa's refusal to turn over the Franklin Fund account, and her claim that Lisa violated other fiduciary duties.[2]

"As to Lisa's other claims, the court granted her request to sell the Long Beach property and distribute the proceeds, granted her request to remove Stephanie as trustee, and rejected her claim of malfeasance against Stephanie.

"In the second phase, the court first concluded that Stephanie was entitled to attorney fees. In reaching that conclusion, the court found that Stephanie was acting on behalf of the trust as a trustee, that she prevailed on the Franklin Fund issue, and that the fees she incurred were expended for the benefit of the trust. After reducing what the court found to be excessive hours spent, the court awarded Stephanie $138,580 in fees, and $19,236.46 in costs.

[¶] . . . [¶]

"In the third phase, the accounting of the Franklin Fund account, the court found Lisa held a total of $221,006.44 traceable to the Franklin Fund. Lisa appealed

---

[2] Subsequent statutory references are to the Probate Code unless otherwise indicated.

from the final judgment that incorporated the court's rulings from all three phases."
(*Placencia*, *supra*, 42 Cal.App.5th at pp. 734-737.)

*Prior Appeal*

In the prior appeal, we ultimately concluded that the Franklin Fund account belonged to Ralph's estate, not to Lisa. (*Placencia*, *supra*, 42 Cal.App.5th at pp. 737-742.) We also found that the trial court's order that the Franklin Fund was owned by the trust to be error, as the estate had not been probated. (*Id.* at pp. 742-744.)

With respect to Stephanie's attorney fees, we noted: "In awarding Stephanie her fees, the court first rendered three predicate findings: that Stephanie was acting in her capacity as trustee, that Stephanie prevailed on the Franklin Fund claim (and no other), and that the fees pursuing the Franklin Fund issue were expended for the benefit of the trust. Lisa challenges all three predicates. [¶] Rather than resolve this issue, we deem it prudent to remand the matter to the trial court for another hearing on Stephanie's attorney fees. Her prevailing on the Franklin Fund issue was an essential predicate for awarding her fees. At the time the court made that order, Stephanie had clearly prevailed: the trust was being enriched by over $200,000. Our ruling here, however, potentially undermines that conclusion. It is less clear that the trust will ultimately get that amount. On the other hand, Stephanie was correct in asserting that Lisa did not have a right of survivorship. In view of these circumstances, the court should have an opportunity to exercise its discretion in the first instance as to whether, and in what amount, Stephanie is entitled to fees. We express no opinion on the matter." (*Placencia*, *supra*, 42 Cal.App.5th at p. 745.)

In the disposition, we stated: "The judgment is reversed as to the ownership of the Franklin Fund account (item 1 of the final judgment and order on petitions), and the court is instructed to enter a new order declaring that the account became part of Ralph's personal estate at the time of his death, and thus Lisa holds the

funds in constructive trust in favor of Ralph's heirs, which are to be determined in a probate proceeding. The judgment is also reversed as to Stephanie's attorney fees (item 4 of the final judgment and order on petitions). The matter is remanded on those issues for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed. Stephanie shall recover costs incurred on appeal." (*Placencia*, *supra*, 42 Cal.App.5th at p. 745.)

*Remand*

In June 2020, the court noted in a minute order that it had received the remittitur and set a status conference. Following that conference, the court deferred rulings on the status of the Franklin Fund account "to allow counsel to have settlement discussions." The court subsequently ordered Lisa's counsel to provide the trust accounting and Franklin Fund account statements to Stephanie's counsel by no later than August 12, and set a hearing for September 1.

At the September 1 hearing, Lisa's counsel was not present. Stephanie's counsel informed the court that not all of the necessary documents had been received from the trustee. The court set an order to show cause (OSC) regarding removal or suspension of the trustee on September 10.

At the September 10 hearing, counsel for both parties discussed the status of the Franklin Fund account. By that point, the funds from the Franklin Fund account had been transferred into several different accounts. Stephanie's counsel estimated the amount at issue was approximately $278,000. Stephanie's counsel also advised the court that in or around May 2020, Lisa had paid a total of approximately $178,574[3] to herself and her lawyers from the trust, leaving the trust with about $25,000.

---

[3] The record refers to the amount as $178,573 at numerous points. The exact amount was apparently $178,574.05, which we sometimes refer to as approximately $178,574.

7

Stephanie wanted Lisa to return the approximately $178,574 to the trust. Stephanie requested an order that no further disbursements should be made from the trust without a court order or agreement between the parties, and further, she sought Lisa's suspension as trustee, for "stripping the trust of its assets and putting it in her own pocket to the detriment of [Stephanie]." Lisa's counsel had advised the court that probate needed to be undertaken in accordance with our opinion, and Stephanie was willing to move forward with probate. (We note that no probate has been opened.) Lisa's counsel disagreed with all of the proposals put forth by Stephanie's counsel.

Ultimately, the court found an accounting of the Franklin Fund account was necessary. Lisa was ordered to file and serve the accounting by October 1, with a continued hearing on October 22. A briefing schedule was set for a continued OSC on Stephanie's requests to 1) return the approximately $178,574 Lisa removed from the trust, 2) suspend Lisa as trustee and replace her with Stephanie, and 3) allow no further disbursements without a court order. Each party was also asked to answer specific questions. The same day, the court also issued an order declaring Ralph's estate was the beneficial owner of the Franklin Fund account and set a status conference for that issue on October 22.

Lisa filed the accounting for the Franklin Fund account on September 30, which reflected an attributable balance of $218,150.58 although those funds were no longer held in Franklin Fund.[4] Stephanie filed a brief in response to the court's September 10 order on October 8, along with a declaration from her attorney. Stephanie argued that by paying herself and her counsel $178,573, Lisa had essentially stripped the trust of funds that would be necessary to pay any award of Stephanie's attorney fees, if the court ordered such an award in accordance with our opinion. Lisa argued that she had

---

[4] Based on the record in the prior appeal, it appears that Lisa sold the Franklin Fund account holdings and transferred the proceeds into accounts in her name, as well as retirement accounts for herself and her husband.

8

the authority to pay herself the trustee and attorney fees that were ordered back in 2017 once those issues were final following the appeal.

At the hearing, the court discussed the issues briefed and noted that probate for the Franklin Fund account might not be necessary because a common fund existed. The court ordered counsel to brief the attorney fees payment to Stephanie and the source from which the funds should be paid. The court was not prepared to make findings regarding the return of the approximately $178,574 to the trust or for the removal of Lisa as trustee. The court ordered counsel to submit a statement of stipulated facts, and set a briefing schedule and a hearing for November 17 on those issues. The court also set a trial-setting conference on the "court of appeal reversal" for the same date.

The parties submitted briefs, declarations, and exhibits. The parties' arguments did not change much. Lisa argued that once the appeal was final, she was entitled to anything in the original 2017 judgment that was not altered by the appeal. Stephanie requested the court reinstate both the original attorney fee award that existed prior to this court's opinion, as well as award fees and costs accrued since January 2017 amounting to $118,527, which included, in part, attorney fees on appeal. She again requested orders for Lisa to be removed as trustee, to direct Lisa to return the approximately $178,574 she paid herself after the appeal was final, and to prohibit any further payments without a court order.

At the hearing on November 17, the court characterized the issues before it as the OSC regarding the removal of Lisa as trustee and the return of the $178,573, and "the on-going pending issue on the remittitur from the Court of Appeal on how we're going to deal with Stephanie's attorney's fees." The court heard extensive argument and conducted discussion with counsel. Despite Lisa's counsel's contentions to the contrary, the court felt strongly that "[e]very equitable princip[le] I've ever understood says that [Stephanie's] entitled to fees here." The court was very concerned that Lisa, "as a fiduciary, paid herself first within days after the remittitur." Lisa argued that there were

9

no funds due to Stephanie out of the trust based on the judgment, and that if she recovered anything it would come from the Franklin Fund account.

The trial court ruled that there was "absolutely no reason why Lisa should have paid herself first . . . when she knew at the time that . . . was going to exhaust most of the money that was left over [in the trust]." Lisa's tacit position that Stephanie could wait until probate was completed to possibly be reimbursed for attorney fees out of the Franklin Fund account until probate was resolved was unfair. The court deemed the matter a "common fund situation and all the principles of the common fund apply here. The equity of the principles of the common fund appl[ies] here." The court granted the OSC and ordered that Lisa repay the trust $178,574.05 and that no further payments from the trust or the Franklin Fund account be made without a court order. The court also suspended Lisa as trustee. The court ordered the payment be made by December 11 and set a review hearing for December 15. Further, the court determined, based on the briefing, that Stephanie was entitled to her attorney fees and costs in the same amount originally ordered based on her recovery of a common fund to the estate. Lisa's counsel requested a statement of decision, and the court ordered Stephanie's counsel to prepare one. The court did not provide a specific due date, nor did Lisa's counsel request that the statement of decision become final before the $178,574.05 was due.

Following the hearing, the court issued a minute order, which added the following: "The court considered whether the doctrine of the common fund provides an equitable exception to the rule against fee shifting. The common fund doctrine provides that when a litigant's efforts create a fund from which others derive benefits that litigant may seek an order for payment of the litigation costs. [(*Serrano v. Priest* (1977) 20 Cal.3d 25.)] [¶] The court finds there is an identifiable fund from which the attorney fees for Stephanie can be paid. That is the Franklin Fund account. The monies held in the Frankland [F]und account are sufficient to compensate Stephanie for her attorney fees and costs. The court further finds that those funds are now available as a result of the

10

litigation in this case wherein the Franklin Funds monies were determined to be assets of the estate of Ralph Placencia. Lisa, as the account holder and former Trustee has access to those funds[.] The court orders Lisa to liquidate those funds so they can be turned over to Stephanie who is appointed as the new trustee. If Franklin Funds does not agree to liquidate the fund, then Stephanie will have to open a Probate Estate to obtain a probate court order. [¶] Unless there is resistance from the Franklin Funds to a liquidation, the court does not see the need to open a probate matter. The common funds are now available and are liquid from the Franklin Funds account. Any monies left over after payment of attorney fees shall be included in the Probate action. The court gives Stephanie the authority to pay her attorney fees consistent with the Judgment in this case entered on October 10, 2017. Stephanie can pay her attorney fees in the sum of $138,580 and costs in the sum of $19,236.46 consistent with the Judgment." The minute order was stamped "[i]t is so ordered" and signed by the judge.

Stephanie's counsel provided to opposing counsel the proposed statement of decision (which was approximately 11 pages) by e-mail on December 4, seven days before the $178,574.05 payment was due from Lisa.[5] Lisa, who in her brief claimed confusion about how to proceed, ultimately filed a notice of appeal on December 11 from "orders" entered on "November 17, 2020 (Minute Orders & Orders from the Bench)."

---

[5] According to Lisa, Stephanie's counsel was required to serve the proposed statement of decision by November 26. Lisa arrived at this date by working backward from the December 11 due date for the funds payment to allow Lisa's counsel 10 days for review and an additional 5 days for review by the court. These dates, however, are nowhere in any court order, and nine calendar days is an unreasonably short time to receive a reporter's transcript and produce a proposed statement of decision. If Lisa had any confusion as to whether the statement of decision was required to be final before the payment was due, she was free to seek ex parte relief.

Stephanie's counsel did not receive the reporter's transcript of the November 17 hearing until November 30. Counsel agreed to stipulate to extend the date for payment after sending the draft statement of decision on December 4, but Lisa's counsel asserts he had no time to review Stephanie's revisions to the proposed stipulation, and did not sign it, filing the notice of appeal instead.

11

## II

## DISCUSSION

### A. *Appealability*

Stephanie argues that Lisa's opening brief includes no statement regarding appealability and does not state the specific orders from which she appeals. The California Rules of Court, rules 8.204 (a)(2)(A) and (B) require both: "(2) An appellant's opening brief must: [¶] (A) State . . . the judgment or order appealed from; [¶] (B) State that the judgment appealed from is final, or explain why the order appealed from is appealable . . . ."

While we find that Lisa could have been more specific about which orders she was appealing at the beginning of her brief, it was possible to discern from her argument which orders she wished to appeal. The same cannot be said, however, regarding a statement of appealability, which appears nowhere in her opening brief. She does not address this issue until page 32 of her reply brief, in which she contends that "in her introductory synopsis, Lisa made it clear that the instant appeal is the result of the trial court's failure to comply with this Court's final remand order in [Lisa's] prior appeal decided by this Court, which necessarily decided all the issues raised by the parties. This statement by itself should be sufficient to demonstrate that a final order was issued and the case is, once again, ripe for appellate decision."

First, an implication from other statements is not what the California Rules of Court require, and second, Lisa is wrong on the merits. She was required to state that either she was appealing from a final *judgment* (which she was not) or that the *order* she was appealing from was appealable and explain why (which she did not do). Further, Lisa's claim that the court's order "decided all the issues raised by the parties" is clearly untrue, given that Lisa filed her notice of appeal on the eve of a hearing in which further issues were to be discussed, including additional attorney fees for both parties.

12

At the November 17 hearing, Lisa's counsel explicitly requested a statement of decision.[6] The court initially replied "no. . . . I'm not going to write one out" but then stated that Stephanie's counsel would do so: "I'm ordering him to prepare the statement of decision." The court further stated that Lisa's counsel would "have an opportunity to object to it. So, [Stephanie's counsel] prepare it, and he'll have an opportunity to object to it." The court stated that Lisa's counsel would have "ten days to respond or object to it" and then "when we come back on that review hearing, if there's something else we need to talk about on that, we can talk about it at that time." In the minute order issued later that day, the court stated: "Court orders [Stephanie's counsel] to prepare a statement of decision and prepare an order consistent with the statement of decision."

In *Estate of Reed* (2017) 16 Cal.App.5th 1122, the court removed an estate's personal representative. The representative did not appeal until a statement of decision was issued more than a year after the court's order from the bench. The respondents argued this was untimely, but the appellate court rejected that argument. The court's written order stated that a statement of decision would be forthcoming, as requested by one of the parties. "By including a statement that a further written order setting forth underlying factual findings would be forthcoming, the trial court effectively reserved jurisdiction over the matter. [Citations.] If such an order were immediately appealable, the trial court would instead be *divested* of jurisdiction and precluded from issuing a statement of decision during the pendency of the appeal. We see no benefit— and significant detriment—to such a process." (*Id.* at p. 1128.) The court ultimately

---

[6] At the November 17 hearing, Stephanie's counsel noted that his briefing included the issue of appellate attorney fees for Stephanie. Lisa's counsel also stated that she also had some additional fees she wanted reimbursed. The court said it was "not prepared to make additional orders on those additional fees." Stephanie's attorney proposed conferring with Lisa's counsel and discussing that with the court at the next hearing, and the court agreed.

13

held: "We therefore conclude that the April 2015 order, which explicitly referenced a forthcoming written decision on the findings underlying the order, was not a final appealable order removing [the personal representative]." (*Ibid*.; see *Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 658-659.)

The same is true here. The court clearly contemplated that a final written order would follow the oral pronouncements at the November 17 hearing and the minute order issued later that day. The minute order left no ambiguity on this point. Further, "[t]he statutory statement of decision process following '"the trial of a question of fact by the court" . . . [¶] . . . "is for the benefit of the court and the parties. To the court it gives an opportunity to place upon [the] record, in definite written form, its view of the facts and the law of the case, and to make the case easily reviewable on appeal by exhibiting the exact grounds upon which judgment rests."'" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981-982.)

Stephanie argues that Lisa did not file the appeal out of confusion, but because the "statement of decision that would have put to rest any questions as to the basis for the Trial Court's ruling and undercut the basis of Lisa's appeal." We cannot ascribe motivations, and ultimately, whether an appealable order exists is a jurisdictional question.

To lay that question to rest, we issued an order on September 7, 2022, stating that we were inclined to dismiss the appeal as premature. The order granted Lisa 60 days to produce a final order from the trial court.[7] We also granted the parties leave to supplement their briefing to address the final order and statement of decision, if there was one. We received the order and statement of decision on November 2, 2022. The court's ultimate rulings had not changed from the draft statement of decision, but some of the

_____

[7] We note for future reference that when there is a good faith argument that no appealable order or judgment exists, the best practice is for the respondent to file a separate motion to dismiss at the earliest possible date.

14

language was different. The November 2 order summarized the statement of decision and stated its order was based on the reasons set forth therein.

In sum, the court orders were as follows: 1) Lisa was suspended as trustee; 2) Stephanie was appointed as temporary trustee; 3) Lisa was to repay the trust $178,568.05, representing the $175,696.05 that she paid to herself and the $2,872 paid to her attorney, no later than seven days after the court signed the order; 4) Lisa was to pay and deliver to Stephanie, as trustee, all other funds belonging to the trust; 5) Stephanie was authorized to disburse $157,816.46 to herself, representing the attorney fee and cost award; 6) Lisa was to liquidate and pay to Stephanie's attorney's client trust account all sums in her possession or control related or traceable to Franklin Fund proceeds, plus any income or increase received after August 31, 2020; 7) Ownership of the Franklin Fund was to be determined in further proceedings pursuant to our ruling in the prior case; and 8) Decisions regarding requests for additional fees and costs were reserved, as was jurisdiction to enforce the order.

The November 2, 2022, order is clearly appealable, and accordingly, we proceed with the appeal as one prematurely taken. (Cal. Rules of Court, rule 8.104(d)(2).) Given that we now have a final order and statement of decision, we disregard any arguments or parts of arguments raised by Lisa relating to any inconsistency between the court's oral pronouncements and written orders, anything regarding the court's statements at the hearing, and similar contentions.

## B. Request for Judicial Notice

Less than 48 hours before oral argument was scheduled, Lisa requested judicial notice of numerous documents relating to the hearing on November 17, 2020, and the reporters' transcript from the hearing on November 1, 2022. The request is denied for failure to comply with rule 8.252(a) of the California Rules of Court.

15

## C. Motion for Sanctions

Stephanie moved for sanctions against Lisa on a conditional basis, arguing that if this appeal is dismissed because it was from a nonappealable order, the appeal is frivolous per se.

The appealability issue has been remedied. While Lisa violated the California Rules of Court in some respects and raises some issues that are improper or entirely without merit, we decline to impose sanctions at this time. We may not, however, be as forgiving if this case comes back to this court again with similar failings.

The motion for sanctions is denied.


## D. Reinstatement of Attorney Fee Award to Stephanie

After remand, Stephanie requested that this court reinstate the attorney fee and cost award that we had ordered the court to reconsider. As relevant here, she requested $138,580 in fees and $19,236.46 in costs, for a total of $157,816.46. This was the same amount the court had ordered in 2016. At that time, the court had found that Stephanie had prevailed on her petition regarding the Franklin Fund account, and that the attorney fees she expended were for the benefit of the trust.

The trial court granted Stephanie's request on three separate grounds – statutory grounds, the trust instrument itself, and the common fund doctrine.

The main change our prior opinion made to the court's previous disposition of the Franklin Fund account is that we determined it belonged to Ralph's heirs as determined by probate, not to the trust. (*Placencia*, *supra*, 42 Cal.App.5th at p. 745.) The court found that Stephanie's efforts in defeating Lisa's claims that she was the sole owner of the Franklin Fund account benefitted and advanced the interests of the trust. Ralph's will stated the Franklin Fund account was devised to the trust (and ultimately to all three daughters).

16

We agree – and Lisa offers no real argument to the contrary, focusing her argument on the common fund theory – that Stephanie is entitled to her fees under section 15684 and the relevant provisions of the trust.  The trust states that expenses of administration, including compensation of the trustee and the attorney, shall be charged, in the trustee's discretion, to the estate.  Section 15684 states:  "A trustee is entitled to the repayment out of the trust property for the following:  [¶]  (a) Expenditures that were properly incurred in the administration of the trust."

Here, the trial court properly exercised its discretion to determine that Stephanie's litigation regarding the disposition of the Franklin Fund account was a benefit to the trust.  At the very minimum, Stephanie's actions give the trust a claim to these funds through probate that it would not otherwise have had.  Without Stephanie's efforts, the Franklin Fund account would have belonged solely to Lisa.  Accordingly, we find no abuse of discretion in the trial court's decision.

As the statutory grounds and the trust instrument are more than sufficient reasons to award Stephanie her fees, we need not consider the alternate basis of the common fund doctrine as an additional reason for awarding fees.

E.  *Orders "Outside Scope of Remand"*

*1.  General Principles*

Lisa's essential argument is that the court only had power to address the issues discussed in our prior opinion on remand and nothing else – regardless of any subsequent events.  In support of this contention, Lisa's reply brief (not her opening brief) cites three criminal cases regarding the narrow scope of remand after appeal, without any discussion as to how a criminal case might materially differ from a civil probate proceeding in this respect.  It is certainly true that the court has no jurisdiction to revisit issues already decided in the case *prior* to appeal.  We also agree that ideally, after an appeal, there is nothing left to address in a case beyond the issues discussed in an

17

appellate court's opinion, but that is not always true. That tends to be particularly untrue in a bitter probate case that has been ongoing for the better part of a decade.

From Lisa's point of view, the court had no power to address anything that happened after remand, regardless of how much the fundamental landscape of the case had changed. This is simply not the law. Ralph's trust was still open and still had funds in it as of the date the remittitur was issued. Section 17206 states the probate court "in its discretion may make any orders and take any other action necessary or proper to dispose of the matters presented by the petition."

In *Donahue v. Donahue* (2010) 182 Cal.App.4th 259, we addressed a trial court's jurisdiction to issue a fee award while an appeal was pending in other matters related to the case. We held: "As a probate court with supervisory responsibilities over the trust, the trial court retained the power to make further orders involving the trust. [Citation.] "'"[T]he ongoing and changing nature of trust administration" may require ongoing proceedings "for instructions, to settle accounts, to fix compensation . . . [and] to allow . . . compromise or settle claims."''" (*Id.* at p. 274.) Other courts have reached similar conclusions. The probate court has "inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust." (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 951.)

Here, new issues arose *after* remittitur. It would frustrate the purpose of the probate court's continued supervision to find the court lacked jurisdiction after an appeal to deal with *new* matters as they arose. The aggrieved party would have no resort but to file an entirely new and separate action, which would be plainly absurd and a waste of judicial resources. We find no error in the court's decision to address new matters that arose after the remittitur was issued.

18

## 2. *Return of Lisa's Withdrawal of $178,574.05*

The primary issue that arose after remittitur – indeed, the event that prompted everything that followed, with the exception of the reinstatement of Stephanie's attorney fee award – was Lisa's decision to withdraw money from the trust in May 2020, shortly *after* the remittitur issued and the prior appeal was final. She withdrew $121,097.80 to reimburse herself for previously paid attorney fees and costs and to pay her attorney directly. The remaining $57,476.25 she withdrew was for herself for trustee fees -- $38,850 in fees through the initial judgment, and $18,626.25 in fees from 2017 through 2020. These amounts totaled $178,574.05. The $18,626.25 had not been authorized by the court. The withdrawal left $25,079.01 in trust assets as of July 31, 2020, not including any claim to the Franklin Fund account.

Lisa argues that her withdrawal of the $178,574.05 was authorized by the court's 2017 order, which awarded her trustee fees, attorney fees, and costs of $157,075.80. What Lisa does not acknowledge, however, is that Stephanie also had an outstanding claim for attorney fees and costs of $157,816.46. While our prior opinion had vacated this award, we returned the issue for reconsideration by the trial court. (*Placencia*, *supra*, 42 Cal.App.5th at p. 745.) Lisa certainly knew of Stephanie's pending claim and the trust's limited cash assets. By paying herself first, she knew or should have known that Stephanie would be disadvantaged.

The court concluded that payment to herself while Stephanie's claim for attorney fees from the trust was pending was a breach of Lisa's fiduciary duty. "Trustees owe all beneficiaries, including the income beneficiaries herein, a fiduciary duty. A fiduciary relationship is a recognized legal relationship such as trustee and beneficiary, principal and agent, or attorney and client. [Citation.] Where a fiduciary relationship exists, there is a duty '"to act with the utmost good faith for the benefit of the other party."'" (*Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1208.) "The fiduciary duty of a trustee includes 'the duty of loyalty [citation]; the duty to deal

19

impartially with the beneficiaries [citation]; the duty to avoid conflicts of interest [citation]; the duty to control and preserve trust property [citation]; . . . and the duty to report and account [citation].'" (*Ibid.*; italics omitted.)

We find no error in the trial court's determination that by paying herself first with the knowledge that Stephanie's claim to attorney fees from the trust was as yet unadjudicated, Lisa violated her fiduciary duties. She put her own interest above the best interest of the trust or the other beneficiaries.

If the trust did not have sufficient funds to pay both Stephanie and Lisa's attorney fee, trustee fee, and cost awards, then it is for the court to award administrative costs on an equitable basis. Lisa claims the trust is not insolvent based on its claim to the Franklin Fund account, but the future status of that account is not yet known. What is known is that the trust account, as of the date of the remittitur, did not have sufficient funds to pay both awards. Lisa should not have paid herself out of these funds until Stephanie's claim was also considered by the court. In doing so, Lisa breached her fiduciary duty.

The only question that remains is whether the court had the authority to order Lisa to return the $178,574.05 she withdrew from the trust. There is no serious argument on this point under either the statutory scheme or cases interpreting it. (§ 17206; *Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 237 ["[A] probate court has the power to settle all disputes relating to the trust matters that come before it"]; *Edwards v. Edwards* (1998) 61 Cal.App.4th 599, 604 ["Under California trust law, a court can intervene to prevent or rectify abuses of a trustee's powers"].) Given the facts before us, ordering Lisa to return the funds to the trust was a reasonable exercise of judicial discretion and supported by the evidence.

20

### 3. Suspension of Lisa and Appointment of Stephanie as Trustee

Lisa next argues that suspending her and appointing Stephanie as temporary trustee were improper orders. But orders suspending trustees are not appealable orders. Final orders removing trustees are appealable under section 1300, subdivision (g), but temporary ones are not. (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 425, fn. 4; *Aviles v. Swearingen* (2017) 16 Cal.App.5th 485, 492.) Given that the court suspended Lisa as trustee, we find no abuse of discretion in the court's decision to temporarily appoint Stephanie as trustee.

### 4. Franklin Fund Account and Probate

Lisa claims that the court erred by ordering the liquidation of the Franklin Fund account and the "payment" of part of the funds to Stephanie without a probate proceeding.

First, it is worth recalling that the Franklin Fund account no longer exists as a single account. Lisa's 2016 accounting showed that in July 2013, she liquidated the account and converted the majority of funds into various investments held in her own name. In the October 2017 judgment, the court found that the total value of assets Lisa was holding that were traceable to the Franklin Fund account was $221,006.44. The judgment determined that Lisa was holding these funds and the proceeds and income from them for the benefit of the trust.

We find no abuse of discretion in the court's order that Lisa turn these funds over to Stephanie as temporary trustee. Lisa offers no good reason why she should continue to maintain these funds in her own name. For the same reasons the court found Lisa had breached her fiduciary duty with respect to the trust, there was sufficient reason not to continue to let her hold the Franklin Fund account proceeds. These had been in her own name for years, and the court was correct in ordering the money returned to the estate with Stephanie as temporary trustee.

21

Second, as to the disbursement of attorney fees to Stephanie, the court's order complies with our prior opinion, which determined the Franklin Fund account belonged to Ralph's estate and must be distributed to his heirs. (*Placencia*, *supra*, 42 Cal.App.5th at p. 745.) The trial court's order states: "From the funds [of the trust] received from Lisa pursuant to paragraphs 3 and 4 above, Stephanie [and her attorneys] are authorized and directed to disburse to or on behalf of Stephanie the sum of $157,816.46, representing attorney fees of $138,580 and costs of $19,236.46 awarded through November 30, 2016."

Paragraph 3 orders Lisa to return the $178,568.05 she paid to herself and her attorney. Paragraph 4 orders Lisa to deliver to Stephanie all other funds belonging to the trust. A separate paragraph, later in the order, directs Lisa to liquidate and pay the trust all funds traceable to the Franklin Fund, which may not be disbursed without a further order from the court. The order is therefore clear that Stephanie may only be paid from non-Franklin Fund monies, and it therefore complies with our prior opinion regarding the necessity of probate[8] for those assets prior to distribution. We find no error.

### 5. *Entry of Order on Remand*

Lisa next contends that the trial court, in September 2020, issued a revised judgment after remittitur regarding the proceeds from the Franklin Fund that was consistent with our initial opinion, but not our modified one. Lisa does not indicate, however, that she ever pointed this out to the court or requested a modified order, and she has therefore waived this issue on appeal.

To the extent we might consider this on our own motion, the relevant portion of the court's September 10, 2020 order, taken from our original disposition, stated: "The court declares and orders that Ralph Placencia's personal estate shall be the

---

[8] The court might consider directing one of the parties to open probate in the interest of bringing this matter to a conclusion.

22

beneficial owner of the proceeds of the Franklin Fund account referred to in the Final Judgment."

The revised opinion changed the disposition to state: "[T]he court is instructed to enter a new order declaring that the account became part of Ralph's personal estate at the time of his death, and thus Lisa holds the funds in constructive trust in favor of Ralph's heirs." (*Placencia*, *supra*, 42 Cal.App.5th at p. 745.)

Given our findings above, we conclude directing the court to enter a new order on this point is unnecessary. First, the court's statement of decision incorporates the language of the revised opinion: "The Court of Appeal . . . determined . . . the Franklin Fund is in fact owned by Ralph's 'personal estate' and that Lisa is holding the funds in constructive trust for Ralph's 'heirs.'"

Second, Lisa is no longer the trustee, and entering an order proclaiming her as such would be illogical and pointless. The most important part of our order was to clarify that the Franklin Fund account was not part of the trust, but part of Ralph's estate. The court's statement of decision and order make that clear by ordering Lisa to liquidate and return all funds traceable to the Franklin Fund account to Stephanie, as temporary trustee. Accordingly, we find no reversible error.

### 6. *Assignment to New Judge*

Lisa asks this court to "remove the judge from the case and order the case assigned to a different judge." She has not appealed the case on the basis of judicial bias (and would not have been successful if she had), nor do we find any appearance of bias or invidious discrimination. The judge took sharp issue with Lisa's decision to pay herself and her attorneys from the trust shortly after the ink was dry on the remittitur, with the knowledge that a substantial attorney fee request from Stephanie remained to be decided. This is not bias – this is disagreement with the manner with which Lisa conducted herself. This was not "erratic," an attempt "to harm Lisa," or "unfairly biased" conduct.

23

Lisa's attacks on the judge, moreover, include matters outside the record and lack record references.

### 7. *"Waiver" of Right to Open Probate*

Finally, Lisa asks this court to issue an order determining that Stephanie and Tina have "waived" their right to open probate. She seems to forget that this is an appellate court, and our role is to review actions by the trial court. No such motion was made before the trial court and no decision on this issue was reached by the trial court.

Further, Lisa's request also asks us to deem her the owner of the Franklin Fund account due to this waiver, which, of course, would completely contradict our prior opinion. As Stephanie points out, moreover, Lisa – who until the court's order was trustee of the trust – did nothing to open probate either. This request is both procedurally and substantively improper.

## III

## DISPOSITION

The order is affirmed. The motion for sanctions is denied. The request for judicial notice is denied. Stephanie is entitled to her costs on this appeal.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

DELANEY, J.

24