Filed 11/29/23  Farnocchia v. Harms CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

<table>
<tr><td>

SUZANNE FARNOCCHIA, as Trustee, etc., et al.,

     Plaintiffs and Appellants,

v.

JOHN T. HARMS,

     Defendant and Respondent.

</td><td>

A164639

(San Francisco City & County Super Ct. No. PTR-19-302746)

</td></tr>
</table>

Pursuant to the terms of their deceased mother's estate, John Harms served as the trustee for three trusts created on behalf of his sister, Martha Eggeling.  Eggeling and her daughter, Suzanne Farnocchia (plaintiffs), filed a petition alleging various breaches of fiduciary duty by Harms and requesting he be removed as trustee and replaced by Farnocchia.  The parties entered into a stipulation to resolve the petition, which included in part Harms's resignation as trustee.  He subsequently filed a motion for trustee compensation and to recover attorney fees incurred in connection with his role as trustee.  The probate court granted the fee petition.  Plaintiffs then moved to set aside the fee petition order, which the court denied.

On appeal, plaintiffs contend the probate court erred because the award of trustee compensation was not reasonable, Harms was estopped from seeking such fees, and the awarded attorney fees were not incurred for the

benefit of the trust.  Plaintiffs further assert the probate court erred by considering new information submitted in Harms's reply papers, utilizing a proposed order submitted by Harms, and denying their motion to set aside. We disagree and affirm the orders.[1]

## I.  BACKGROUND

Annette Harms, the mother of Harms and Eggeling, created a trust in which she named herself and Harms as cotrustees (Annette Trust).  Her trust directed the establishment of a federal generation-skipping transfer tax exempt trust, a nonexempt trust, and a qualified subchapter S trust for both Harms and Eggeling.

Upon Annette's death, Harms became the sole trustee.  Pursuant to the terms of the Annette Trust, Harms created the Martha H. Eggeling Exempt Trust, the Martha H. Eggeling Non-Exempt Trust, the Martha H. Eggeling Exempt Qualified Subchapter S Trust (jointly the Eggeling Trusts), the John T. Harms Exempt Trust, the John T. Harms Non-Exempt Trust, and the John T. Harms Exempt Qualified Subchapter S Trust (jointly the Harms Trusts).

At the time, Harms was also serving as trustee for their deceased father, Hugo Harms's estate.  In September 2011, in connection with Hugo's estate, the superior court entered an order entitled, "Order Settling Fifth and

---

[1] Plaintiffs attached as exhibit A to their opening brief a document entitled "Marin County Superior Court Rule 6.75."  They did not submit any request for judicial notice.  Pursuant to California Rules of Court, rule 8.252(a)(1), "a party must serve and file a separate motion with a proposed order" to obtain judicial notice.  Plaintiffs failed to do so, and we thus decline to consider this exhibit.

Conversely, on January 4, 2023, Harms sought judicial notice of San Francisco County Superior Court Uniform Local Rules of Court, rules 14.7 and 14.53.  This court granted that request on January 19, 2023.

Final Account and Report (Trust A) of Successor Trustee, Allowing Fees to Trustee and His Attorneys, and for Final Distribution." The court ordered the assets in Hugo's Trust A distributed to Harms in his capacity as sole trustee of the Annette Trust, to be held, administered, and distributed according to the terms of the Annette Trust. These assets, along with Annette's other assets, were distributed to the six sub-trusts created by the Annette Trust.[2]

In addition to these assets, Harms and Eggeling each received from Hugo's other trust (Trust B) a partial interest "outright" in certain properties and the Harms family's corporation, Rigo Industrial Properties. At the time, Harms was managing Eggeling's interest in the properties. He informed Farnocchia he needed to open a Merrill Lynch account in Eggeling's individual name in order to receive her income from the interests she owned outright in the properties and to pay her share of the expenses without commingling these funds with those she received from her trust assets.

To open that account, Harms stated he required power of attorney. The standard Merrill Lynch power of attorney form contained a clause that the agent "will have a right to receive reasonable payment for services provided under this Durable Power of Attorney." Eggeling subsequently executed this document.

The parties recount a different version of the conversation leading to execution of the power of attorney form. Farnocchia asserts Harms requested to serve as trustee for the Eggeling Trusts. Farnocchia stated Harms represented the work he would do for the trusts would duplicate work he was doing for his own trusts, and he would not request or take any fee for his

_____

[2] We note this appeal does not take issue with the initial funding of the Eggeling Trusts or the Harms Trusts.

3

services. Eggeling agreed to this arrangement provided Farnocchia was listed as a cotrustee on the Merrill Lynch accounts. Conversely, Harms stated he only informed Farnocchia he would not charge for acting under the Merrill Lynch power of attorney for Eggeling's individually owned Merrill Lynch account. He stated there was no discussion of the Eggeling Trusts.

In 2018, Eggeling executed a unilateral revocation of the Merrill Lynch power of attorney. She also executed a revocation of Harms's power of attorney with regard to the Eggeling Trusts. She sought to appoint Farnocchia in lieu of Harms as her sole trustee for the Eggeling Trusts. Eggeling subsequently sought to have Merrill Lynch provide the trust assets to Farnocchia.

In 2019, plaintiffs sent multiple letters to Harms and his counsel requesting various trust documents and formal accounting of trust assets. Plaintiffs also demanded Harms resign as trustee of the Eggeling Trusts. Plaintiffs threatened legal action in the event Harms failed to provide a "full and complete accounting" and the relinquishment of all assets.

Plaintiffs subsequently filed a petition alleging Harms failed to provide an accounting, deliver assets under his control, or acknowledge Eggeling's efforts to terminate his trusteeship. The petition asserted causes of action for an accounting, breach of trust, delivery of certifiable copies of the terms of each trust, removal of trustee, and termination and/or modification of trusts. Plaintiffs also sought a preliminary injunction against Harms.

The parties subsequently executed a stipulation to resolve the pending petition. The stipulation noted Harms provided (1) verified documentary evidence of assets and deposits, and (2) a list of all accounts he has maintained on behalf of Eggeling. Harms also agreed, via the stipulation, to (1) provide an accounting for any future amounts he receives for Eggeling's

4

interests, (2) resign as trustee from the Eggeling Trusts, and (3) relinquish possession and control of all Eggeling assets to Farnocchia. Plaintiffs reserved the right to move for attorney fees, costs, and accounting and bookkeeping expenses. Likewise, Harms reserved the right to move for attorney fees, trustee fees, and costs.

The court entered an order approving the stipulation and took the petition off calendar.

Harms subsequently filed a petition for the allowance of compensation to himself as the former trustee and for reimbursement of attorney fees incurred in connection with his role as trustee (fee petition). The fee petition detailed various activities undertaken by Harms on behalf of the Eggeling Trusts, including managing real property, maintaining bank accounts, filing taxes, investing assets, and managing distributions. The fee petition noted Harms had not received compensation for his services, he was entitled to reasonable compensation, and he requested $147,095 based on a percentage of the trust assets managed.

Harms's petition also sought reimbursement of $62,463.24 in attorney fees. Harms asserted he was entitled to reimbursement for attorney fees incurred in response to plaintiffs' petition and during the transition period to Farnocchia as successor trustee.

Plaintiffs objected to Harms's petition. Plaintiffs raised various arguments against any award of trustee compensation, including (1) Harms failed to provide any accounting or inventory of assets and was not responsive to Eggeling's needs; (2) Harms had never sought compensation for any trustee services and had "orally agreed to serve in such capacity **without compensation**, and induced his appointment as Trustee . . . in late 2011"; and (3) Harms failed to maintain any time records regarding his

5

management of the Eggeling Trusts. In connection with the attorney fees request, plaintiffs argued the fees incurred were for Harms's personal benefit and not for the benefit of the Eggeling Trusts.

In reply, Harms submitted two additional declarations. The first declaration, from Christy J. Styer, an attorney specializing in estate planning, explained how she created the fee calculation schedule that was attached to the fee petition. Her declaration further set forth the scope of Harms's duties as trustee on behalf of the Eggeling Trusts. The second declaration, from Harms, detailed his recollection of his telephone call with Farnocchia. He stated that call did not involve trustee fees, but rather that Harms would not charge Eggeling for acting as her agent under the Merrill Lynch power of attorney form.

Plaintiffs filed a sur-reply, asserting in part Harms's reply and supporting declarations improperly contained new material and hearsay, or were contradicted by Harms's prior deposition testimony. Plaintiffs also asserted Harms's request for fees should be barred by the doctrine of laches and the statute of limitations.

The court issued a tentative order requiring the parties to appear. At the hearing, the court "stated that it is not in a position to review and adjudicate [Harms's] fee request right now because there are too many threshold issues that need to be resolved." The court identified these issues as the status of the assets and any accounting, whether trustee fees should be denied based on estoppel, waiver, or any other doctrine, and whether there are terms in the stipulation that require court enforcement. Both parties stated they believed the briefing adequately addressed the issues, neither requested an evidentiary hearing or trial, and the matter was taken under submission.

6

The court subsequently granted Harms's fee petition. The court concluded Harms was entitled to $147,095 in reasonable compensation for serving as trustee of the Eggeling Trusts. Likewise, the court concluded Harms was entitled to reimbursement of attorney fees for advice received while he was trustee and related to completing his administration of the Eggeling Trusts. It awarded $61,557 in attorney fees and costs.

Plaintiffs subsequently filed a motion to set aside the order and for a statement of decision. The motion first claimed the court's decision to utilize the proposed order submitted by Harms, which did not address "substantial contested issues identified by the parties within their briefing," deprived plaintiffs of the right to have a statement of decision. It thus requested the order be set aside to allow for the issuance of a statement of decision on contested issues. The motion also argued plaintiffs were entitled to relief from the order due to mistake, inadvertence, or excusable neglect. Specifically, plaintiffs asserted they anticipated the court would issue a tentative order from which they could request a statement of decision and were not aware that Harms submitted a proposed order. The motion then proposed that the statement of decision address the following: (1) waiver of compensation by Harms; (2) identification of plaintiffs as the prevailing parties on the original petition; (3) denial of Harms's request for attorney fees; (4) denial of Harms's request for trustee compensation; and (5) a finding that attorney and trustee fees are not legally deductible from the Eggeling Trusts.

At the hearing, plaintiffs objected to the proposed order submitted by Harms's counsel because it (1) was allegedly not served on plaintiffs' counsel, and (2) did not encompass "threshold" issues, such as waiver and estoppel. The court rejected both arguments. First, it declined to find any impropriety

7

with the submission of the proposed order, which tracked the fee petition's prayer for relief and left blank spaces for the amount of any award. The court explained it considered the parties' briefs and determined the appropriate amount "with assistance of my staff." Next, the court rejected plaintiffs' argument that the order was incomplete. The court explained it mentioned "threshold issues" because "I saw that there was a factual dispute between the parties on some of the issues that [plaintiffs' counsel] described at the beginning of this hearing . . . and so I was expecting the parties to tell me that we were going to have to take evidence in order to resolve the issue because there was a conflict between the parties as presented." The court then noted the parties declined an evidentiary hearing and submitted on the papers. Accordingly, the court considered the arguments in the papers and found Harms's position regarding the scope of the fee waiver "persuasive."

Following argument, the court denied plaintiffs' motion. It noted the parties declined a trial or evidentiary hearing, so the court was not obligated to provide a statement of decision. Likewise, the court explained plaintiffs could not rely on Code of Civil Procedure section 473 because it only applied to a default judgment or dismissal. Plaintiffs timely appealed.

## II. DISCUSSION

On appeal, plaintiffs contest both the order granting Harms's fee petition and the order denying their motion to set aside the fee petition order. We address each order in turn.

### A. *Order Granting Harms's Fee Petition*

Plaintiffs contend the probate court erred in awarding trustee compensation because there was no reasonable basis for such an award, and the court failed to consider equitable issues such as waiver and estoppel. They further assert the probate court erred in awarding attorney fees

8

because such fees were not incurred for the Eggeling Trusts' benefit, and there was no reasonable basis for the award. Finally, plaintiffs claim the probate court erred in considering evidence submitted by Harms in his reply brief. We disagree.

### 1. Adequacy of Record

As an initial matter, Harms contends plaintiffs failed to provide an adequate record because there was no reporter's transcript from the October 13, 2021 hearing on his fee petition. We disagree that the lack of a reporter's transcript bars plaintiffs' appeal.

Harms invokes the rule that, " 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] . . . ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) Courts thus have refused to reach the merits of appellants' claims in the absence of a reporter's transcript or an agreed or settled statement. (*Id.* at p. 186; Cal. Rules of Court, rule 8.120(b) ["If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings"].)

Here, however, the parties did not request that the court conduct a trial or evidentiary hearing. Rather, they submitted the matter on the papers. The appellate record includes the parties' briefs in support of and in opposition to the fee petition, as well as the court's written decision. And

9

plaintiffs do not argue that the order should be reversed based on any arguments raised outside of the briefs submitted to the probate court. Accordingly, we decline to find any forfeiture because the absence of a reporter's transcript does not impair our review of the court's order. (See *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 696 [reviewed without reporter's transcript where "none of the parties relie[d] on anything that occurred during that argument [before the trial court]"].)

## 2. Reasonableness of Trustee Compensation

Both parties acknowledge the trusts are silent as to trustee compensation. Accordingly, compensation awards are governed by Probate Code section 15681, which provides: "If the trust instrument does not specify the trustee's compensation, the trustee is entitled to reasonable compensation under the circumstances." "We review rulings on trustee's fees to determine whether the court abused its discretion." (*Finkbeiner v. Gavid* (2006) 136 Cal.App.4th 1417, 1422; see also *Estate of McLaughlin* (1954) 43 Cal.2d 462, 465 ["[Trustee compensation] rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of a manifest showing of abuse."].) "[T]he sole question before an appellate court when the fee allowed [the trustee] is attacked as excessive is whether there is substantial evidence to support the trial court's finding." (*McLaughlin*, at p. 466.) Stated another way, the trial court's determination will be upheld unless it " 'exceeds the bounds of reason.' " (*Id.* at p. 468.)

"In determining or approving compensation of a trustee, the court may consider, among other factors, the following: [¶] (1) The gross income of the trust estate; [¶] (2) The success or failure of the trustee's administration; [¶] (3) Any unusual skill, expertise, or experience brought to the trustee's work; [¶] (4) The fidelity or disloyalty shown by the trustee; [¶] (5) The amount of

10

risk and responsibility assumed by the trustee; [¶] (6) The time spent in the performance of the trustee's duties; [¶] (7) The custom in the community where the court is located regarding compensation authorized by settlors, compensation allowed by the court, or charges of corporate trustees for trusts of similar size and complexity; and [¶] (8) Whether the work performed was routine, or required more than ordinary skill or judgment." (Cal. Rules of Court, rule 7.776.)

Here, plaintiffs contend the probate court erred in awarding fees because (1) Harms did not charge or collect fees during his tenure as trustee; (2) he was duplicating work between his trusts and the Eggeling Trusts, with no time records to indicate what he expended time on for the Eggeling Trusts; and (3) he breached his fiduciary duties to the Eggeling Trusts by not providing an accounting or communicating with Eggeling about her trusts. However, the record contains contradictory evidence supporting Harms's argument in favor of trustee compensation. Specifically, Harms alleged he never discussed serving as trustee in his telephone call with Farnocchia but rather was discussing power of attorney for Eggeling's individually owned Merrill Lynch account. This statement from his declaration was supported by Harms and Eggeling subsequently executing a power of attorney form. Likewise, the record does not indicate any objection by plaintiffs to Harms's reservation of the right to seek trustee fees as part of their stipulation to resolve plaintiffs' petition. To the contrary, the petition for approval of the stipulation acknowledges Harms's reservation of rights on the issue of "costs of suit, attorney's fees, and trustee fees" and states that the "effect of [the stipulation] is to resolve substantive issues, and to have the Court determine the extent of fees allowable for the necessity of these proceedings." In sum, the court's decision to credit Harms's declaration over other evidence

11

presented by plaintiffs regarding whether Harms was entitled to trustee compensation was not an abuse of discretion.

Likewise, the record does not indicate the court abused its discretion in setting the amount of that compensation. The court noted Harms identified significant work and liability associated with serving as trustee. Harms also brought significant experience to his role of trustee based on experience serving as trustee for his parents' multiple trusts. The court noted it found this declaration "persuasive." Harms presented evidence that the amount requested—based on a percentage of assets for his trust management and a percentage of revenue for his property management—was in accordance with standard rates charged for such services. Conversely, plaintiffs did not present an alternative calculation or otherwise offer evidence that the rates sought by Harms exceeded those regularly charged. We thus find no basis for concluding the court abused its discretion in determining the appropriate amount of trustee compensation.

### 3. Attorney Fees

Plaintiffs contend Harms was not entitled to recover attorney fees because they were not incurred for the benefit of the Eggeling Trusts and there was no reasonable basis for the award.

As with trustee compensation, we review the probate court's ruling on attorney fees for an abuse of discretion.[3] (*Donahue, supra,* 182 Cal.App.4th at pp. 268–269.) Probate Code section 16243 provides in relevant part that a

---

[3] Plaintiffs assert the proper standard of review is de novo. However, the cases plaintiffs cite involve questions of statutory interpretation. Here, as plaintiffs note, the question is factual—i.e., whether fees were incurred to the benefit of the trust rather than the trustee—and a deferential standard of review is appropriate. (See *Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 268–269 (*Donahue*).)

trustee may pay reasonable compensation to "employees and agents of the trust, and other expenses incurred in the collection, care, administration, and protection of the trust." "Attorneys hired by a trustee to aid in administering the trust are entitled to reasonable fees paid from trust assets." (*Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 235.)

In *People ex rel. Harris v. Shine* (2017) 16 Cal.App.5th 524, our colleagues in Division Five summarized when such fees are appropriate: " ' "The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust," ' and not for the personal benefit of the trustee. [Citation.] Courts have found a trustee's legal services were for the benefit of the trust, and thus payable from trust funds, where the attorneys helped prepare an accounting [citation]; successfully defended an accounting [citation]; litigated to preserve trust assets [citation]; successfully defended against a petition to invalidate the trust [citation]; or successfully defended against a petition to remove or surcharge the trustee [citation].

"Fee awards have been denied or reduced where the attorneys helped prepare an inaccurate accounting [citation]; unsuccessfully defended an accounting [citation]; or unsuccessfully defended a petition to remove or surcharge the trustee [citation]. Where the results of such proceedings were mixed, courts have either awarded fees based on the trustee's overall success in the proceeding [citation] or apportioned fees according to the trustee's success [citation]. [¶] Fee awards have also been found inappropriate where the trustee acts from personal interest or motive. [Citations.]

"In short, the costs of a *successful* defense to a removal or surcharge petition are generally chargeable against the trust even though the trustee

13

personally benefits as a result. [Citation.] However, a trustee is not entitled to indemnity for fees incurred in an *unsuccessful* defense of such a petition absent an additional showing that 'the trustee subjectively believed that the expense was necessary or appropriate to carry out the purpose of the trust and that belief was objectively reasonable.' " (*Id.* at pp. 534–535.)

Plaintiffs' petition was resolved via a stipulation between the parties. The stipulation does not identify either party as the prevailing party. In assessing which side prevailed, "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622.)

Here, plaintiffs contend they must be found to be the prevailing party because they achieved all of their litigation objectives.[4] However, a review of the petition and stipulation suggest a more nuanced outcome. While plaintiffs undoubtedly achieved their goal of removing Harms as trustee and obtaining documentation regarding the trusts and their assets, the petition alleged Harms failed to provide an accounting as to Eggeling's various assets and should be held liable for breach of trust. The probate court could reasonably have concluded Harms successfully defended against these issues. The stipulation accepted Harms's production of "documentary evidence of assets obtained and check deposits" in lieu of providing a "formal accounting of assets." The stipulation only required Harms to provide an accounting for any future sums he receives on behalf of Eggeling. Similarly, the stipulation

---

[4] Plaintiffs rely on *Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1231 to argue Harms is not entitled to attorney fees because those fees were not incurred for the benefit of the trust. We do not disagree with this general proposition, but it does not assist us in evaluating which party was successful in the litigation.

did not contain any finding or admission that Harms breached his fiduciary duties to the Eggeling Trusts.

The outcome via stipulation was arguably both successful and unsuccessful for the parties. For Harms, in particular, his major concession was resigning as trustee. But unsuccessful defenses may still result in compensable fees if " 'the trustee subjectively believed that the expense was necessary or appropriate to carry out the purpose of the trust and that belief was objectively reasonable.' " (*People ex rel. Harris v. Shine, supra*, 16 Cal.App.5th at p. 535.) Here, Harms was appointed trustee via his mother's trust. Plaintiffs have not identified any trust provisions granting Eggeling the power to alter this trustee appointment. Accordingly, the probate court may have concluded that Harms's belief he was required to serve as trustee over the Eggeling Trusts was objectively reasonable. Accordingly, the probate court did not abuse its discretion in concluding the attorney fees sought by Harms were generally chargeable against the Eggeling Trusts.

We next turn to whether specific legal expenses incurred by Harms poststipulation are compensable. Certain categories of fees clearly relate to the litigation on plaintiffs' petition. For example, Harms was appropriately reimbursed for any work performed by his attorney to provide information regarding the Eggeling Trusts' assets, including gathering and producing documentation regarding those assets and the trusts. Such work was a requirement of the parties' stipulation.

The fact that Harms incurred these fees after he stipulated to resign as trustee is irrelevant. The question is not *when* Harms incurred such expenses, but *what* caused him to do so. "A trustee who has resigned . . . has the powers reasonably necessary under the circumstances to preserve the

15

trust property until it is delivered to the successor trustee and to perform actions necessary to complete the resigning or removed trustee's administration of the trust." (Prob. Code, § 15644; see also *Fiduciary Trust Internat. of California v. Klein* (2017) 9 Cal.App.5th 1184, 1196 [even when a trustee resigns or is removed, "the trustee 'has the powers reasonably necessary under the circumstances to preserve the trust property,' including the trust's legal files, 'until it is delivered to the successor trustee and to perform actions necessary to complete the resigning or removed trustee's administration of the trust' "].) Accordingly, plaintiffs' argument to the contrary is not persuasive.

Plaintiffs further argue fees related to Harms's fee petition are not recoverable because they were for his personal benefit and related to his claim for attorney fees. However, courts have concluded that expenses incurred by a trustee in litigating its fee entitlement are justifiably incurred "in connection with the proper administration and execution of the trust estate." (*Estate of Griffith* (1950) 97 Cal.App.2d 651, 656; see also *Estate of Trynin* (1989) 49 Cal.3d 868, 874 ["Where the right to counsel fees is based on statute, recovery for fee-related services has been consistently allowed"].)[5] In *Estate of Trynin*, the California Supreme Court considered the right to attorney fees for fee-related services under Probate Code former section 910. (*Trynin*, at pp. 872–873.) The court noted no prior case had addressed the issue, but analogized "in a related area, that a testamentary trustee is

---

[5] Plaintiffs rely on *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819 to argue "there was no prospect of actual litigation" because his attorney fees were incurred after he stipulated to resign and were caused by his efforts to claim attorney fees. But the record shows Harms was required to expend fees in connection with his deposition, and his pursuit of fees is a legitimate trust expense.

16

entitled to compensation for defending a challenge to the reasonableness of its own fee application. [Citations.] In [*Estate of Griffith, supra,* 97 Cal.App.2d 651, 656], Justice McComb, writing for the Court of Appeal, concluded that expenses incurred by a trustee in litigating its fee entitlement had been justifiably incurred 'in connection with the proper administration and execution of the trust estate.' [Citation.] Fee-litigation expenses have also been allowed to a guardian of the person and estate of an incompetent person. [Citation.] The logic which allows testamentary trustees and legal guardians to receive compensation for the expenses of fee litigation likewise supports the right of an attorney for an estate's representative to be compensated for fee-related services." (*Id.* at pp. 877–878.) Accordingly, attorney fees sought in connection with Harms's fee petition are likewise compensable.[6]

Finally, plaintiffs cite *Donahue, supra,* 182 Cal.App.4th 259 to assert the probate court's order must be reversed because it failed to demonstrate the court " 'carefully review[ed]' " the fee request for " 'reasonableness and necessity, particularly in relationship to the trust's interest and purposes.' "

In *Donahue,* a beneficiary and former trustee engaged in litigation regarding the former trustee's management of certain assets. (*Donahue, supra,* 182 Cal.App.4th at p. 263.) The former trustee succeeded in the

---

[6] We do note, however, that any work performed by Harms's counsel and reimbursed by the Eggeling Trust must be considered work on behalf of Harms as trustee. Accordingly, the attorney-client privilege associated with such services resides in the office of the trustee and would subsequently be under the authority of Farnocchia. (See *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1133 ["We recognize that, under the rule we adopt, a trustee must take into account the possibility that its confidential communications with an attorney about trust administration may someday be disclosed to a successor trustee."].)

17

litigation and subsequently sought approximately $4.85 million in attorney fees, representing fees from three separate law firms. (*Id.* at pp. 264–265.) The court ordered the current trustees " 'to reimburse the fees and costs prayed for in the petition' " apart from certain non-attorney and non-paralegal timekeepers and some " 'severely redacted' " entries on one firm's bill. (*Id.* at p. 266.) The beneficiary appealed. (*Ibid.*) While the appeal from the initial fee order was pending, the former trustee sought an additional $300,000 in attorney fees. "[T]he trial court, without explanation, ordered the current cotrustees to reimburse [the former trustee] over $175,000 in attorney fees . . . . The court also granted [the former trustee's] request for future attorney fees." (*Ibid.*) The beneficiary again appealed. (*Id.* at p. 267.)

On appeal, the court reversed the orders awarding attorney fees. The appellate court explained, " 'When the record is unclear whether the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning.' " (*Donahue*, *supra*, 182 Cal.App.4th at p. 269.) In addressing the first order, the court concluded the lack of detail in the award, compared with the excessive request, was insufficient: "Comparing the court's pithy explanation to the size and complexity of the fee request, with the full billing records consuming more than 800 pages of the record on appeal, we cannot tell whether the court exercised its discretion to carefully review the attorney documentation and determine their reasonableness and necessity, particularly in relationship to the trust's interest and purposes." (*Id.* at p. 270.)

The court found the second attorney fee award "equally cryptic." (*Donahue*, *supra*, 182 Cal.App.4th at p. 270.) The court noted the trial court's award was " 'the essence of arbitrariness' " because it " 'cannot be justified by

18

the plaintiffs' request, the supporting bills, or the defendant's opposition.' " (*Ibid.*)

The appellate court generally expressed concern with padding and the potential duplication of effort due to the former trustee's retention of multiple law firms, each with "their own supervising, support and administrative infrastructure." (*Donahue, supra*, 182 Cal.App.4th at p. 272.) It also expressed concern regarding the lack of differentiation between fees incurred on behalf of the trust and those expended to protect the former trustee's financial interest in the trust assets. (*Id.* at pp. 272–273.) Accordingly, the appellate court remanded the matter "to the trial court for further consideration and amplification of its reasoning on the fee awards." (*Id.* at p. 274.)

*Donahue* is factually distinct from this case. The complexity in the billing practices and fees in *Donahue* is absent in the present matter. Most notably, (1) Harms did not retain multiple attorneys, (2) Harms did not have a financial interest in the trusts at issue that were at risk in the litigation, and (3) the present matter does not contain any ambiguity regarding what fees were being reimbursed. As plaintiffs note, the court awarded essentially the entirety of Harms's request, apart from approximately $900. Harms's attorney submitted declarations and unredacted billing statements that identified the work being performed and, thus, the work being reimbursed. Accordingly, this court—unlike the *Donahue* court—has not been hindered from reviewing the probate court's attorney fee award and assessing whether the court abused its discretion in making such an award. And, as explained above, we find no such abuse of discretion.

19

## 4. Consideration of Evidence and Argument Submitted in Reply

Plaintiffs argue any supplemental evidence and new arguments raised by Harms in his reply brief in support of his fee petition should not have been considered. However, plaintiffs do not identify any evidence in the record indicating the court relied on those materials in reaching its decision.

Moreover, even if we were to conclude the probate court erred in some respect, we would not reverse. An appellant may not obtain a reversal simply by pointing out legal error. He or she must show the claimed error is prejudicial, i.e., that it has resulted in a miscarriage of justice. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) Here, plaintiffs have failed to demonstrate how this alleged error caused them prejudice. Judicial concern with parties submitting supplemental evidence and new arguments in reply briefs relates to the potential deprivation of an opportunity to respond. (See *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500.) Here, however, plaintiffs filed a sur-reply, thus having an opportunity to present their position on the supplemental materials.

## 5. Submission of Proposed Order

Plaintiffs also contend Harms's submission of a proposed order, without serving a copy on counsel, constituted an ex parte communication with the court in violation of California Rules of Court, rule 7.10(b). However, plaintiffs again fail to identify any resulting harm from the alleged error.

As noted by the probate court, the proposed order merely tracked the fee petition's prayer for relief with blank spaces for the amount of any trustee compensation and attorney fee award. The court rejected plaintiffs' argument that, in the absence of the proposed order, it would have issued a second tentative. Rather, the court stated such an expectation was not true:

"The tentative ruling was issued prior to the October 13th hearing, and the tentative ruling was appearance required. [¶] . . . [¶] . . . That was the tentative for this case. And then we had the appearance, and at the appearance you . . . told me that it was acceptable . . . that the matter be adjudicated on the papers, and so that's what I did. [¶] The idea that I might issue a second tentative following that, I don't see that as anything supported by the processes and procedures here in court or in the statutes or the rules of court." Accordingly, the probate court rejected plaintiffs' argument that it would have issued a second tentative had it not received the proposed order. Absent a showing of prejudice by plaintiffs, we must presume any error was harmless.

## B. Motion to Set Aside

Plaintiffs next contend the probate court erred in denying their motion to set aside the order granting Harms's fee petition. They assert the court had identified threshold issues of waiver, estoppel, and statute of limitations, and they "expected that the Court would rule on" such issues. Plaintiffs now dispute the omission of those issues, and the probate court's subsequent refusal to issue a statement of decision.[7]

Plaintiffs fail to cite any authority for the proposition that the probate court was required to issue a statement of decision or make written determinations on the various "threshold" issues they identify. Accordingly, this argument is waived. (See *Central Valley Gas Storage, LLC v. Southam* (2017) 11 Cal.App.5th 686, 695 ["The argument contains no legal analysis or legal authority in support and is therefore forfeited."].)

---

[7] Plaintiffs also raise a one-sentence argument that a computation of time and the reasonable value of that time is necessary for determining an appropriate fee award. However, we considered and rejected plaintiffs' arguments on this point in part II.A.3., *ante*.

Even if plaintiffs had not waived this argument, the probate court was not required to issue a statement of decision. Code of Civil Procedure section 632 governs when a court is required to issue a statement of decision following "the trial of a question of fact by the court." That section provides, in relevant part, for trials "concluded within one calendar day or in less than eight hours over more than one day . . . the request [for a statement of decision] must be made prior to the submission of the matter for decision. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision." (Code Civ. Proc., § 632, 1st par.) Here, the hearing did not exceed one calendar day, and plaintiffs did not request a statement of decision or identify any controverted issues in such a request before submitting the matter for decision. Accordingly, plaintiffs have not demonstrated the court erred by declining to set aside its order granting the fee petition so as to first issue a statement of decision.

## III. DISPOSITION

The order granting Harms's petition for trustee compensation and attorney fees, and the order denying plaintiffs' motion to set aside that fee award, are affirmed. Respondent may recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

22

MARGULIES, J.


WE CONCUR:


HUMES, P. J.


GETTY, J.[*]


A164639
*Farnocchia v. Harms*

---

[*] Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23